## Nancy A. Harteau *versus* John Harteau.

A libel was filed by a wife for a divorce, on the ground of the desertion and cruel neglect of the husband; and it appeared, that the parties were married in the county of Berkshire, and after residing there for some years, took up their residence in the State of New York, where the alleged desertion and cruel neglect took place; that the wife thereupon returned into that county to live, and filed her libel there, but that at the time when it was filed, the husband retained his domicile in New York; and that such desertion and cruelty would be no ground of divorce by the laws of New York. The Court refused to decree a divorce *a mensâ et thoro*, on the ground that it had not jurisdiction of the case.

The maxim, that the domicile of the wife follows that of the husband, will not be applied to oust the Court of its jurisdiction, in case of a libel by a wife for a divorce. *Semble.*

THIS was a libel for a divorce *a vinculo*, on the ground ot adultery committed by the husband. The libel also charged the husband with desertion and cruel neglect of the libellant.

It appeared, that the parties, who were natives of this State, were married in this county and resided here for several years after their marriage ; that they then removed into the State of New York, where they took up their residence, and where the alleged desertion and neglect took place ; that the libellant thereupon returned to her mother's residence in this county, and filed the libel ; that she has lived here ever since ; and that at the time when the libel was filed, the libellee had his domicile in the State of New York.

The *St.* 1785, *c.* 69, § 3, provides " that divorce from bed and board may and shall be granted for the cause of extreme cruelty in either of the parties." The preamble to § 7 declares, that " whereas it is a great expense to the people of this State to be obliged to attend at Boston upon all questions of divorce, when the same might be done within the counties where the parties live, and where the truth might be better discerned, by having the witnesses present in court," therefore it is provided by that section, " that all questions of divorce and alimony shall be heard and tried by the Supreme Judicial Court, holden for the county where the parties live, and that the decree of the same Court shall be final."

The *St.* 1810, *c.* 119, under which the libellant claimed a divorce *a mensâ et thoro*, provides, " that wherever any husband shall utterly desert his wife, or shall grossly or wantonly and cruelly neglect or refuse to provide suitable maintenance for her, being of sufficient ability thereto, in every such case the wife may be divorced *a mensâ et thoro*, and upon a libel for that purpose, the Supreme Judicial Court shall have as full authority as to alimony, and all other matters and things, as they now have, or may hereafter have, in other cases of divorce *a mensâ et thoro*."

By the laws of New York, no divorce can be decreed by the courts of that State, for cruelty and neglect on the part of the husband.

The case was argued in writing, by *Jones* for the libellant, and *Filley* for the libellee.

*Sept. 20th,*  SHAW C. J. delivered the opinion of the Court. The ground of defence to this libel is, that the parties were not within the jurisdiction or limits, nor subject to the laws of the commonwealth, at the time of the act done, which is relied on as the cause of divorce.

We consider it to be proved, that these parties had bonâ fide changed their domicile and become citizens of the State of New York, before the desertion charged. Such being the fact, it seems to us to be the same case as if they had never been inhabitants of this commonwealth. As such, it seems to fall within the principle of the cases of *Richardson* v. *Richardson*, 3 Mass. R. 153 ; and *Hopkins* v. *Hopkins*, 3 Mass. R.

158. The true ground of argument, in this case, is, not that the parties did not live in this county, but that they were not then subject to the jurisdiction of the Court, and their conjugal rights and obligations did not depend upon the operation of our laws.

The right to a divorce, and the cases in which it shall be granted, are regulated by the *St.* 1785, *c.* 69, § 3. The 7th section regulates the place where the trial shall be had. It appears from the preamble to this section, that two objects were to be accomplished by this act : the first, to transfer the jurisdiction from the governor and council to the Supreme Judicial Court ; and the second, which resulted as a consequence from the other, to have the hearing in the several counties, instead of requiring all persons to attend at Boston, as they must when the jurisdiction was in the governor and council.

The term *live*, in this section, it appears to me, must mean where the parties have their domicile when the libel is filed, or the suit commenced.

To test this, suppose parties live as man and wife in Suffolk, and adultery is committed by the husband, but it is unknown to the wife. They remove into Middlesex *bonâ fide*, and whilst residing there, the adultery is discovered. Must the wife libel in Suffolk ? It may be said, the fact was committed there ; but the rule of locality, applicable to a trial for crime, does not apply. Suppose, in the above case, that whilst living at Boston, the husband had committed the offence in Providence, out of the jurisdiction of Massachusetts. Would not this be as much a good cause of divorce for the wife, as if done within the jurisdiction ? The fact is to be tried, not because it is a violation of the law of the commonwealth, which the State has a right to punish, but because it is a violation of the conjugal obligation, contract and duty.

The wife is, in such case, entitled to a divorce ; and if she continues to reside in the same county, her libel would properly be brought in that county, though the parties do not live therein, within the literal construction of the statute. But suppose, in the mean time, from necessity or otherwise, she has taken up her abode in another county ; she still has a right to a divorce, and the question is, in what county shall she file her

libel.   Neither of the parties now live in the county, where they formerly lived together.   It would seem to be a good compliance with the requisition of the statute, which cannot be construed literally, to construe it *cy pres* and permit her to file her libel, in the county, where she has her abode at the time.   *Lane* v. *Lane*, 2 Mass. R. 167.   The statute directs that the suit shall be brought in the county where the parties live, for two reasons, to save expense, and because the *truth can be better discerned.*   This would in general be true, not only because, often, the fact would be done at such place, but also because the parties would there be better known.   It clearly does not limit the place of trial to the county where the fact was committed, because that is often out of the State, or in the State, but in a county other than that where the parties *live.*

Much obscurity has, we think, been thrown on the subject, by confounding the two questions, which are essentially different, viz. 1. In what cases a party is entitled to claim a divorce ;  and 2. In what county the libel should be brought.

As it is a right conferred by statute, the one question may sometimes depend on the other ;  for if by the terms of the statute no suit can be instituted, it is very clear that no divorce can be had.

But I think there may be cases, where the statute confers a right to have a divorce, in which the statute gives a general jurisdiction to this Court, and yet where the parties do not *live,* that is, have their domicile, either at the time of the *act done,* or at the time of the *suit commenced,* in any county in this commonwealth.   If so, there are cases where the statute cannot be literally complied with, and must be construed *cy pres* according to the intent.

Suppose a husband commits adultery and then purchases a house and actually takes up his domicile in another State, but before his wife has joined him, she is apprized of the fact, and immediately files a libel for a divorce, and obtains an order to protect her from the power of her husband, as by law she may.   He is an inhabitant of another State, and can m no sense be said to *live* in any county in this State.   And yet it would be difficult to say that she is not entitled to have a divorce here.

Supposing, instead of the last case, he has actually purchased a house and changed his domicile to another State, and there commits adultery, and the wife, not having joined him, and not having left her residence in this State, becomes acquainted with the fact, and libels and obtains a similar order, could she not maintain it ? Yet, in the latter case, at the time of the *act done*, and in the other, at the time of the *suit instituted*, the respondent, *one of the parties*, certainly did not live in any county of this commonwealth.

This suggests another course of inquiry, that is, how far the maxim is applicable to this case, " that the domicile of the wife follows that of the husband." Can this maxim be true, in its application to this subject, where the wife claims to act, and by law, to a certain extent and in certain cases, is allowed to act, adversely to her husband ? It would oust the Court of its jurisdiction, in all cases where the husband should change his domicile to another State, before the suit is instituted.

It is in the power of a husband to change and fix his domicile at his will. If the maxim could apply, a man might go from this county to Providence, take a house, live in open adultery, abandoning his wife altogether, and yet she could not libel for a divorce in this State, where, till such change of domicile, they had always lived. He clearly lives in Rhode Island ; her domicile, according to the maxim, follows his ; she therefore, in contemplation of law, is domiciled there too ; so that neither of *the parties* can be said to *live* in this commonwealth.

It is probably a juster view, to consider that the maxim is founded upon the theoretic identity of person, and of interest, between husband and wife, as established by law, and the presumption, that from the nature of that relation, the home of the one is that of the other, and intended to promote, strengthen and secure their interests in this relation, as it ordinarily exists, where union and harmony prevail. But the law will recognise a wife, as having a separate existence, and separate interests, and separate rights, in those cases where the express object of all proceedings is to show, that the relation itself ought to be dissolved, or so modified as to establish separate interests,

16 *

and especially a separate domicile and home, bed and board being put, a part for the whole, as expressive of the idea of *home.* Otherwise, the parties in this respect would stand upon very unequal grounds, it being in the power of the husband to change his domicile at will, but not in that of the wife.

The husband might deprive the wife of the means of enforcing her rights, and in effect of the rights themselves, and of the protection of the laws of the commonwealth, at the same time that his own misconduct gives her a right to be rescued from his power on account of his own misconduct towards her.  *Dean v. Richmond*, 5 Pick. 461 ; *Barber v. Root*, 10 Mass. R. 260.

The place where the marriage was had, seems to be of no importance. The law looks at the relation of husband and wife as it subsists and is regulated by our laws, without considering under what law or in what country the marriage was contracted.

The good sense of the thing seems to be, if the statute will permit us to reach it, that where parties have *bonâ fide* taken up a domicile in this commonwealth and have resided under the protection and subject to the control of our laws, and during the continuance of such domicile, one does an act, which may entitle the other to a divorce, such divorce shall be granted, and the suit for it entertained, although the fact was done out of the jurisdiction, and whether the act be a crime which would subject a party to punishment or not; that after such right has accrued, it cannot be defeated, either by the actual absence of the other party, however long continued *animo revertendi*, or by a colorable change of domicile, or even by an actual change of domicile ; and that it shall not be considered in law, that the change of domicile of the husband draws after it the domicile of the wife to another State, so as to oust the courts of this State of their jurisdiction, and deprive the injured wife of the protection of the laws of this commonwealth and of her right to a divorce.

But where the parties have *bonâ fide* renounced their domicile in this State, though married here, and taken up a domicile in another State, and there live as man and wife, and an act is done by one, which, if done in this State, would entitle

the other to a divorce, and one of the parties comes into this State, the courts of this commonwealth have not such jurisdiction of the parties, and of their relation as husband and wife, as to warrant them in saying, that the marriage should be dissolved. The case of *Barber* v. *Root*, is an authority for saying, that such a divorce would not be valid in New York.

It is of importance that such a question should be regulated, if possible, not by local law or local usage, under which the marriage relation should be deemed subsisting in one State and dissolved in another ; but upon some general principle, which can be recognised in all States and countries, so that parties who are deemed husband and wife in one, shall be held so in all.

So many interesting relations, so many collateral and derivative rights of property, and of inheritance, so many correlative duties depend upon the subsistence of this relation, that it is scarcely possible to overrate the importance of placing it upon some general and uniform principle, which shall be recognised and adopted in all civilized states.

It appearing that the alleged desertion would be no ground of divorce, by the laws of the State of New York, that at the time of the alleged desertion, the parties had their home in that State and were not subject to the law and jurisdiction of this commonwealth, and that when the suit was instituted, the respondent still had his domicile in the State of New York, the Court are of opinion, that a divorce *a mensâ*, cannot be decreed, and that the libel be dismissed.* If it be true, as stated by the respondent's counsel, that no evidence was given of the respondent's ability to support his wife, that would seem to be an additional reason why the libel cannot be maintained.

---

* See Revised Stat. *c.* 76, § 7 to 11 inclusive.