LEWIS RUHLAND vs. DANIEL D. WATERMAN, Town Clerk, et al.

DECEMBER 29, 1908.

PRESENT: Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Petition to Town Clerk, on Voting for Granting of Licenses.   Intoxicating Liquors.   Construction of Statutes.*

The proviso in section four, Chapter 102, of the General Laws, relative to the electors of the several towns and cities voting for or against the granting of licenses for the sale of intoxicating liquors, upon petition therefor filed with the town clerk, has no meaning under the present methods of elections. The legislature having failed to establish a basis of mathematical computation, the court can not construe the proviso so as to derive any rule, either as to the basis of computation of the number of names required to make a valid petition, or as to the method by which the town clerk shall determine that the signers of the petition are "qualified electors," and the proviso is therefore void for uncertainty in these respects.

(2)  *True Intent of Legislature.   Construction of Statutes.*

Upon an examination of the history of legislation upon this subject, as well as upon consideration of the frame of section four itself, it appears that the real and true intent of the legislature was to continue and preserve the right of local option as it had existed and been exercised under former statutes, and that the enacting of the proviso in a form which is void for uncertainty does not express the true intent and meaning of the legislature; that the remainder of the section, after striking out the proviso, forms in itself a clear, complete, and intelligible statute, and so the true intent of the legislature is preserved by allowing the remainder of the section to stand as a complete statute.

(3)  *Voting on Granting Licenses Yearly.*

With this elimination the general purpose of the section would be to require the electors of the several cities and towns to cast their ballots for or against the granting of licenses at each election of general officers, with general provisions as to the effect of the majority of the ballots cast on the future granting of licenses; and so, the question " Will this town (or city) grant licenses for the sale of intoxicating liquors ? " should be placed upon the ballots to be used in the several cities and towns at the ensuing election of general officers, in accordance with the provisions of section 22 of chapter 11 of the General Laws as amended by section 2 of chapter 1229 of the Public Laws passed April 26, 1905.

(4)  *Warrant for Elective Meeting.   Duty of Town Clerk to Insert Notice.*

Under the provisions of General Laws cap. 37, § 8, a town or city clerk has authority to insert in his warrant notice of the fact that the proposition of

granting licenses is to be voted on; but aside from this, the legislature having directed a vote on the question to be taken, it becomes the duty of the town or city clerks to give notice thereof in the warrants calling the meetings.

CERTIORARI.   Writ granted.

PARKHURST, J.   In this cause the court, on the 23rd day of October, 1908, filed the following

### RESCRIPT.

The petitioner, a licensed wholesale liquor dealer in the town of Cranston, prefers this petition for a writ of *certiorari* to review the action of the respondent Waterman, as town clerk of that town, in certifying, under section 4 of chapter 102 of the General Laws, to the other respondent Bennett, Secretary of State, that a sufficient number of qualified electors have petitioned for the insertion upon the ballot for the election to be held on November 3d, next, the following question: "Will this town grant licenses for the sale of intoxicating liquors," the petitioner averring, also, that he "has a large property which would greatly deteriorate in value should an election result in prohibiting the sale of intoxicating liquors."

The section in question reads as follows: "The electors of the several cities and towns who are qualified to vote in the election of all general officers shall, at each election of general officers, cast their ballots for or against the granting of licenses for the sale of intoxicating liquors pursuant to this chapter: *Provided,* that no vote shall be taken on this question in any city or town unless a number of the qualified electors equal in cities to ten per centum, and in towns to fifteen per centum, of the vote cast for general officers at the election next preceding shall petition the city or town clerk therefor at least twenty days prior to said election; and the city or town clerk shall upon such petition insert a proposition providing for taking such vote in the warrant calling the town, ward, or district meetings, and shall at least fifteen days previous to the day of said election file with the secretary of state a certificate

that the question, 'Will this town (or, city) grant licenses for the sale of intoxicating liquors,' is to be submitted to the vote of the people in such town or city. If a majority of the ballots so cast at any such election be against the granting of such licenses, no license under the provisions of this chapter shall be granted in such city or town during the twelve calendar months next after such election, nor until such city or town shall vote at some subsequent election of general officers to grant such licenses; but if the majority of the ballots cast at any such election shall be for the granting of such licenses, then licenses under the provisions of this chapter shall be granted in such city or town during the twelve calendar months after such election and until such city or town shall vote at some subsequent election of general officers not to grant licenses."

The court is of the opinion that so much of the statute above quoted, contained in section 4, chapter 102, General Laws, as follows, "*Provided*, that no vote shall be taken on this question in any city or town unless a number of the qualified electors equal in cities to ten per centum, and in towns to fifteen per centum, of the vote cast for general officers at the election next preceding shall petition the city or town clerk therefor at least twenty days prior to said election; and the city or town clerk shall upon such petition insert a proposition providing for taking such vote in the warrant calling the town, ward, or district meetings, and shall at least fifteen days previous to the day of said election file with the secretary of state a certificate that the question, 'Will this town (or, city) grant licenses for the sale of intoxicating liquors?' is to be submitted to the vote of the people in such town or city," is incapable of any reasonable construction, and contains no language from which this court can deduce any rule applicable to the whole State, either as to the basis of computation of the number of names required to make a valid petition or as to the method by which the clerk of any town or city shall determine either the number required or the qualifications of the persons whose names are signed to such petitions.

We therefore hold that such proviso is void for uncertainty.

As to the remainder of section 4, chapter 102, General Laws, above quoted, which is as follows:

"SEC. 4. The electors of the several cities and towns who are qualified to vote in the election of all general officers shall at each election of general officers cast their ballots for or against the granting of licenses for the sale of intoxicating liquors pursuant to this chapter. * * * If a majority of the ballots so cast at any such election be against the granting of such licenses, no license under the provision of this chapter shall be granted in such city or town during the twelve calendar months next after such election, nor until such city or town shall vote at some subsequent election of general officers to grant such licenses; but if the majority of the ballots cast at any such election shall be for the granting of such licenses, then licenses under the provisions of this chapter shall be granted in such city or town during the twelve calendar months next after such election and until such city or town shall vote at some subsequent election of general officers not to grant such licenses;" we hold that the general purpose of the section is to require the electors of the several cities and towns to cast their ballots for or against the granting of licenses, etc., at each election of general officers; with general provisions as to the effect of the majority of the ballots cast on the future granting of licenses; that such remainder of section 4 forms in itself a clear, complete, and intelligible statute, entirely similar in its effect, as to the whole State, to chapter 87, sections 3, 4, and 5 of Public Statutes (1882) as applied to Providence and Pawtucket for several years.

The question, "Will this town. (or, city) grant licenses for the sale of intoxicating liquors?" should be placed upon the ballots to be used in the several cities and towns of the State at the ensuing election of general officers, in accordance with the provisions of section 22 of chapter 11 of the General Laws, as amended by section 2 of chapter 1229 of the Public Laws, passed April 26, 1905.

The proviso of the statute under which the respondent Waterman, town clerk of the town of Cranston, has given his certificate to the respondent Bennett, Secretary of State, in

this case, having been herein declared to be void, we hold that it conferred no jurisdiction upon the town clerk to make such certificate. The writ of *certiorari* prayed for by the petitioner will therefore be granted.

Opinion hereafter.

The petitioner thereupon filed a motion for leave to re-argue the questions involved in this and a number of other petitions of a similar nature, which had been disposed of in accordance with the above rescript. Upon further consideration of this motion for leave to re-argue, the court filed the following

## Rescript.

The only new suggestion in the petitioner's motion for re-argument is contained in the third ground, as follows:

"Chapter 9, section 12, General Laws, prescribes notice of meetings by warrant of town and city clerks.

"The proviso in section 4 of Chapter 102 requires the city and town clerks to insert the proposition in their warrants for elective meetings.

"This is the only provision of law to be found for inserting the proposition in the warrants.

"If the proviso is cut out of said section 4, then no provision of law remains for inserting this proposition in the warrants for elective meetings," whereupon he argues:

"The proviso is inseverable from the main section for the reason that it carried within its terms the method of notifying the electors of the vote upon the question.

"Section 22 of Chapter 11, General Laws, amended by section 2 of Chapter 1229, Public Laws, provides for placing this question upon the ballots, but no positive law appears anywhere for notifying the electors of the vote to be taken except in this expunged proviso, where the clerk is directed to insert it in the warrant calling the meeting. Without such notice, how can the question legally come before the electors, and without the proviso, how can it legally be inserted in the warrant? If not legally notified why should a portion of the electors responding

to notice for other purposes decide the question?   We submit that they can not."

The argument is not convincing.   Gen. Laws, R. I. cap. 37, § 8, provides:   "The notice to the electors to meet in a town meeting prescribed by law, shall be given by the town clerk issuing his warrant, directed to the town sergeant or one of the constables of such town, requiring him to post, at least seven days before the day appointed for such meeting, written notifications in three or more public places in the town, of the time when and place where said meeting is to be holden and of the business required by law to be transacted therein."   This provision has been in force in this State, in substantially the same terms, since General Statutes (1872), see cap. 32, § 8, beyond which we have not deemed it necessary to examine. Under our statute of construction, the words "town clerk" include city clerk—see Gen. Laws cap. 26, § 8.

Even if there was no statute directing that notice should be given, we do not think such omission would be fatal.   The legislature having directed a vote on the question to be taken "at each election of general officers," it becomes the duty of town and city clerks to give notice thereof in the warrants calling the meetings for that purpose.

The motion for re-argument is denied.

The first question that arises upon the proviso above quoted (Gen. Laws § 4, cap. 102) is as to the meaning of the words "unless a number of the qualified electors equal in cities to ten per centum, and in towns to fifteen per centum, of the vote cast for general officers at the election next preceding, shall petition the city or town clerk therefor at least twenty days prior to said election;" and this question subdivides into two others, viz.:   (1) How shall the city or town clerks determine the number of qualified electors necessary to a valid petition; and   (2) How shall the city or town clerks ascertain whether the names appearing upon the petitions are the names of "qualified electors?"

The basis of computation as to the required number of petitioners is a fixed percentage of the "vote cast for general

officers at the election next preceding;" and it was contended before us, by the petitioner's counsel, that the only possible construction of these words must be either the sum of all the votes cast for each general officer in the whole State, or at least the sum of all the votes cast for each general officer in the particular town or city where the electors petitioned the clerk. Now it appears from the printed "official count," etc., prepared by the State Returning Board, showing the number of ballots cast at the election held November 5, 1907 (being "the election next preceding"), that the total number of votes (excluding blank and defective ballots) cast for general officers, was as follows:

|  | Whole State. | Cranston. |
|---|---|---|
| For Governor.................................... | 66,106 | 2,252 |
| " Lieutenant Governor........................ | 64,168 | 2,181 |
| " Secretary of State........................... | 64,015 | 2,183 |
| " Attorney General............................. | 64,022 | 2,195 |
| " General Treasurer........................... | 63,734 | 2,163 |
| Totals.................................... | 322,045 | 10,974 |

Using these figures as the basis of computation, the fifteen per centum required in the town of Cranston would be either 48,307 signatures (on the basis of the whole State), or 1,647 signatures (on basis of Cranston alone). On the former basis the number of signatures required would be more than twice as many as the whole number of ballots cast at that election in Providence, and on the latter basis more than seventy per centum of the total number of ballots cast in Cranston alone at that election.

The petitioner thereupon further contended that, under either of these methods of computation, the petitions to the town clerk would be insufficient to warrant the town clerk's action in certifying to the Secretary of State, as above set forth, for want of a sufficient number of names.

Another suggestion offered to the court, by counsel for re-

spondents in this and other similar proceedings, was that the town clerk or city clerk would be justified in taking the vote for governor in a town or city as the basis of computation; and it appeared, as to the town of Cranston and some other towns, as to which evidence was offered, that this method of computation was in fact used; it being argued that this, being the highest number of votes cast for any one of the general officers, might fairly be regarded as indicating "the vote cast for general officers," and, at all events, as furnishing a safe basis of computation, as it would result in requiring a larger number of signatures than would be required under other methods to be hereafter mentioned.

Other suggestions were that the average of the votes cast for the several general officers, or the lowest number of votes cast for any general officer, be taken as the basis of computation.

It thus appears that five different solutions of the mathematical problem set by the language under discussion were offered to the court for its consideration. The court was not able to accept any of these solutions, for the plain reason that they were not in accordance with the statute. The words are "the vote cast for general officers at the election next preceding." It is plain that these words are not equivalent either to the "sum of all the votes cast for each general officer in the whole state," or to the "sum of all the votes cast for each general officer in the town or city," etc.; and the results of such a construction, as worked out above, show upon their face that it would be a forced and unreasonable construction.

It is equally evident that the words under discussion are not equivalent to "the vote for governor," "the average of the votes cast," or "the lowest number of votes cast."

What, then, do the words "the vote cast for general officers" mean? After full argument and mature deliberation, we are forced to say that they have no meaning under our present methods of election. It is apparent from reference to the above tabulation of "the votes cast for general officers" in the whole State, and in Cranston, at the "next preceding election," that each of the general officers had a different

number of votes. There are no means by which we can find any certain and particular number which can be said to be "the vote cast for general officers." It might have been possible, under our former manner of voting before the Australian ballot came into use, and when, perhaps, only two political parties contested the election, that the result of an election might have shown the same number of votes cast for each general officer on the republican ticket, and the same number of votes cast for each general officer on the democratic ticket; and so it might have been possible to say that "the vote cast for general officers," under such a state of facts, would have been the sum of the votes cast for the two tickets. But this state of facts would have been only a possibility even in the past, because it is well known by all that even then the inalienable right of the voter to "split," "scratch," or "scatter" was freely exercised.

It is fully manifest, therefore, that the person who drafted the proviso in question, and the General Assembly which passed it, failed to establish a basis of mathematical computation, and that this court is unable so to construe the proviso in this regard as to give it meaning; it is therefore void for uncertainty in this respect.

There is also another uncertainty in the proviso, in that it uses the term "qualified electors" as the persons who may petition the town clerk or city clerk, and requires that they petition "at least twenty days prior to said election." At once the question arises, "qualified" when? Must they have been "qualified electors" at the next preceding election, or may they be persons whose names have been placed upon the voting-lists at the last canvass-meeting prior to the filing of the petition, or may they be persons who may be qualified to vote at the next election although their names do not as yet appear upon the voting-list, but may be placed there, if proper steps are taken prior to the election? Again, a further question arises. How shall it be ascertained that the petitioners are qualified electors? Shall the town or city clerk be governed, in his decision as to accepting or rejecting names on such petitions, by the voting-lists used at the last

election or by the voting-lists made up at the last canvass-meeting prior to the receipt of the petition, and shall he require that the names on the petition shall be exactly the same in all respects as to full names, abbreviations of Christian names, initials, and residences as appear on the voting-lists, so that he may *prima facie* be satisfied of the identification and qualifications of the signers by comparison with the voting-lists; and shall he reject all names other than those which appear in identically the same form and with the same residence as they appear on the voting-lists; or shall he use his own knowledge and judgment as to accepting names which do not appear upon the voting-lists in the same form or do not appear at all, determining for himself whether the signatures are those of electors actually qualified at the time of signing the petition, or may he satisfy himself by inquiry, or by taking or accepting evidence by affidavit or otherwise, as to the validity of the signatures ?

It was earnestly contended, by counsel for the petitioner in this cause, that the town clerk must be governed solely by the voting-lists in his custody, or accessible to him, as the only record evidence of the qualification of voters, and that he should accept as valid signatures only those which were written in the same identical form as appeared upon such voting-lists, rejecting all such as appeared in different form, whether by initials, abbreviation of Christian names, different residences, or otherwise. It appeared in evidence that the town clerk used his own judgment as to accepting such signatures, relying upon their identity with the names upon the voting-list in many, perhaps in the majority, of cases, but also relying, in case of discrepancy, upon his judgment or knowledge of the signatures and electoral qualifications.

It is plain, upon a mere statement of these difficulties, that it would be practically impossible for this court to define what is meant by the words "qualified electors," as used in this proviso, so as to derive from the language of the statute an intelligible general rule to be applied throughout the State.

Inasmuch, therefore, as we find it impossible to so construe the words under consideration as to derive therefrom any

rule, either as to the basis of computation of the number of names required to make a valid petition, or as to the method by which the town clerk or city clerk shall determine that the signers of the petition are "qualified electors," we are compelled to say that the proviso above set forth in full is void for uncertainty.

The final question that arises is whether the fact that this proviso is void for uncertainty renders void the whole of section 4 of chapter 102, or whether the proviso may be struck out and the remainder of section 4 be allowed to stand as a clear, complete, and intelligible statute, capable of enforcement without the proviso.

It was earnestly contended, on behalf of the petitioner, that the whole of section 4 should be declared void because it was evident that the General Assembly intended that a vote for or against the granting of licenses should not ·be taken in any town or city unless upon the initiative of qualified electors by petition; and that if the machinery provided failed to work by reason of its uncertainty, then the right and duty of local option must necessarily cease; that if the court should find the words of the proviso relating to petitioners void for uncertainty, it should then leave the section to read as follows: "Section 4.   The electors of the several cities and towns who are qualified to vote in the election of all general officers, shall, at each election of general officers, cast their ballots for or against the granting of licenses for the sale of intoxicating liquors pursuant to this chapter: *Provided*, that no vote shall be taken on this question in any city or town." The petitioner strenuously urged that this, and this only, would be a true interpretation of the legislative intent, and cited *Com.* v. *Potts*, 79 Pa. St. 164; *Philadelphia* v. *Barber*, 160 Pa. St. 123; *General Assembly* v. *Gratz*, 139 Pa. St. 497; *Connolly* v. *Union &c., Co.*, 184 U. S. 540, and numerous other cases, to the general proposition of law that where the proviso to a section of an act is void for unconstitutionality or for other reasons, nevertheless, though not enforceable, such invalid proviso or portion can not be disregarded in giving the interpretation of the section.

We do not for an instant dispute the general principle of these cases. On the contrary, we have fully considered not only the proviso, but also the entire section and the whole chapter in the endeavor to arrive at the *true* legislative intent.

The chapter in question is entitled, "Chapter 102," "Of the Suppression of Intemperance." The words show in a general way what is the scope and purpose of the chapter, and its various sections place restrictions upon the manufacture and sale of intoxicating liquors, by means of a license system, with numerous and minute provisions for the administration of such system and for the enforcement of penalties for its violation.

In order to ascertain the intention of the legislature in the enactment of section 4, chapter 102, of the General Laws, it will be instructive to review the history of liquor legislation in this State preceding and succeeding the period of constitutional prohibition (from the year 1886 to the year 1889), in so far as local option provisions are to be found therein.

Chapter 87 of the Public Statutes of 1882, in section 2 thereof, vested in town councils and boards of aldermen power to grant liquor licenses within their respective towns or cities.

Section 3 of said chapter 87 provided that the electors of the city of Providence at each annual election should cast their ballots for or against the granting of liquor licenses, and provided that no license thereafter granted in said city should be valid if a majority of the ballots cast at any such city election were against the granting of such licenses, and further prohibited the granting of such licenses, in that event, by the license commissioners of Providence. Sections 4 and 5 of said chapter 87 provided for local option in the town of Pawtucket and enacted that licenses might be granted by the town council if the ballots cast were in favor of granting the same, and that no licenses should be granted in said town if a majority of the ballots so cast were against the granting of such licenses.

Section 9 of said chapter 87 provided that no license for the sale of intoxicating liquor should be granted by any town

council if at any regular meeting such town should vote not to grant any such; the vote thereon to be by ballot upon the request of any five qualified electors.

Chapter 326 of the Public Laws, passed June 1, 1882, amended section 9 of said Chapter 87 by providing that no license should be granted in any town if at the annual town meeting in April such town should vote not to grant such license; and providing that the town clerk, upon request in writing of ten qualified electors, should insert a proposition providing for the taking of such vote in the warrant calling such meeting.

Chapter 558 of the Public Laws, passed March 30, 1886, amended said chapter 87 of the Public Statutes of 1882 by extending the method of casting and counting ballots for or against the granting of licenses in the city of Pawtucket, and re-enacted the provisions of said chapter 87 permitting such licenses if a majority of such ballots were in favor thereof, and prohibiting the granting of such licenses in Pawtucket if a majority of said ballots were against the granting thereof.

At the general election, April, 1886, a prohibitory amendment was adopted by the people of the State—article V of Amendments to the Constitution.

At the May session, 1886, the General Assembly passed chapter 596 of the Public Laws as a general act for the enforcement of the prohibitory amendment, repealing chapter 87 of the Public Statutes and several acts in amendment thereof and in addition thereto.

At the May session of the General Assembly, 1889, the amendment article VIII, annulling the prohibitory amendment article V, was voted for submission to the people at a special election to be held on the third Thursday in June, 1889, under and by the provisions of chapter 808 of the Public Laws passed May 30, 1889; at which special election article V of Amendments was annulled, by the adoption of article VIII of Amendments, by vote of the people.

A special session of the General Assembly, called and holden in the month of July, 1889, followed the repeal of the prohibitory amendment.

An act to regulate the sale of liquors passed at this special

session August 1, 1889 contains for the first time a clause identical with section 4 of chapter 102 of the General Laws.

Public Laws, July session, 1889, cap. 816, § 4.

It thus appears that the right of "local option" on the part of all the towns and cities of the State has been for many years recognized and preserved by the General Assembly as an important part of the system adopted for the "Suppression of intemperance."

It is to be noted that prior to June 1, 1882, local option might be exercised in towns at the request of only *five* qualified electors; and that after June 1, 1882 (cap. 326, Pub. Laws of 1882), and down to the adoption of the prohibitory amendment, local option might be exercised in towns at the request in writing of only *ten* qualified electors; and it is also to be noted that the peremptory requirements as to voting at each annual election, for or against the granting of licenses in Providence and Pawtucket, appearing in Pub. Stat. 1882, cap. 87, §§ 3 and 4, were enacted by the General Assembly as to Pawtucket, by Pub. Laws cap. 858, passed April 19, 1881; and as to Providence, by Pub. Laws cap. 889, § 3, passed April 29, 1881. Each and all of these provisions were simple, clear, and easily understood and administered.

After the annulment of the prohibitory amendment, when the General Assembly, by Pub. Laws of 1889, cap. 816, passed August 1, 1889, re-established a license system, it still showed its intention to preserve the local option features of the former statutes by the general language of section 4; and it also intended, beyond question, to make this law applicable throughout the State under one general rule, so that there should no longer be one rule in the towns, and another rule in the cities of Providence and Pawtucket. It doubtless supposed that this intention had been fully carried out in both particulars, and that the section as passed did furnish a method by which a vote should be taken only at the instance of a certain number of qualified electors, expressed in a definite manner. We can not suppose that the General Assembly knew that the proviso was so vague and indefinite as to be void for uncertainty, and that it knowingly passed such a proviso intentionally for

the purpose of annulling the earlier general words of section 4, and so as to make them inoperative. Nor can we suppose that, as urged by the petitioner, it would not have passed this statute without this proviso. If it had understood that this proviso would render the whole section inoperative, we are convinced that it would have attempted to so change it as to make it accomplish the real intent.

The consideration of the entire history of this legislation, as above set forth, as well as the frame of section 4 itself, convinces us beyond a doubt that the real, primary, and true intent was to continue and preserve the right of "local option" as it had existed and been exercised under the former statutes; and the enactment of the proviso, in a form which is void for uncertainty, does not express the true intent and meaning of the legislature, because it does not mean anything at all.

We have already, in the rescripts above quoted, sufficiently considered and answered in the affirmative the question whether the remainder of section 4, after striking out the proviso, forms in itself a clear, complete, and intelligible statute, and have shown how the same should be administered.

We believe that we have found and declared what was the true intent of the General Assembly in this matter, and have decided this cause, so as to preserve that true intent, in accordance with principles of such universal acceptance in the courts that the citation of authority is unnecessary. All of the cases cited on the briefs, so far as they apply at all, support the same general doctrine, that we have followed above, as to the duty of the court to ascertain the "true intent" of the General Assembly in construing statutes. None of the cases cited is so nearly similar to the case at bar as to give us direct aid in construing the language here in question. And there is no case cited where a proviso, which is void merely because it is meaningless, has been held to have the effect of rendering an entire section void where the remainder of the section is capable of a clear construction and of enforcement. The cases cited where a proviso, or a distinct section, has been held to have the effect of nullifying a whole section or a whole

act, are cases where the intention of the legislation was perfectly clear and intelligible, and where such intention so clearly expressed made the act unconstitutional, and therefore void; and where, the court, having ascertained what was the clear intention, have found that the act, without the obnoxious portions, would not express the true intent. We are therefore of the opinion that a review of the authorities cited on the briefs would serve no useful purpose, but would unnecessarily encumber the opinion.

*Edward D. Bassett, John W. Hogan, Arthur P. Sumner, and Philip S. Knauer,* for petitioner.

*William B. Greenough, Attorney General,* for Secretary of State.

*Benjamin W. Grim,* for Waterman, town clerk.