## ELSIE MOORE TORLONIA *vs.* MARINO TORLONIA.

Third Judicial District, New Haven, June Term, 1928.
WHEELER, C. J., MALTBIE, HINMAN, JENNINGS and YEOMANS, Js.

Argued June 7th—decided July 27th, 1928.

*Arthur M. Marsh* and *Philo C. Calhoun,* for the appellant (defendant).

*William H. Comley,* for the appellee (plaintiff).

HINMAN, J. The fact that numerous corrections of the finding are sought by the appellant has occasioned a thorough examination of the evidence, all of which was introduced by the plaintiff with the exception of certain exhibits pertaining principally to plaintiff's passport and naturalization. The finding is susceptible to amendment as to a few minor details and certain statements from the draft-finding as to similar details are properly to be added, but as such changes do not deprive of essential support the ultimate facts

as found by the trial court, no desirable purpose would be served by setting forth such corrections, except as certain of them are hereinafter mentioned.

At the time of the marriage of the parties, August 15th, 1907, the plaintiff, then nineteen years of age, and her parents were domiciled in Greenwich; the defendant was, and ever since has been, an Italian subject, domiciled in Rome. Immediately following the marriage the plaintiff went with her husband to Rome and resided there until 1925. They occupied a building known as the Palace Torlonia which is owned by an Italian corporation known as the Elsie Moore-Marino Torlonia Corporation in which the plaintiff and her three children have substantially the entire beneficial interest. The house was three stories in height and contained one or more separate apartments on each floor. The defendant had the life use of an apartment therein.

In May, 1925, the plaintiff was led to believe that the defendant was unduly intimate with one Maria Lorenzoni; after an investigation she informed her husband of the facts which had come to her knowledge and he admitted the existence of such relations. On one occasion, when the plaintiff was discussing the matter with the defendant, the latter became angry and struck her with a piece of wood, painfully injuring her. She refused to continue longer the relation of husband and wife with the defendant, has never since cohabited with him, and in July, 1925, came to the United States, with her three minor children, and remained at Greenwich until October. For the purpose of this trip the plaintiff procured from the Italian government a passport of the type known as a non-immigrant visitor's passport, which by its terms is issued to Italian citizens to permit their entry as visitors into foreign countries for a period of one year from the date thereof. The

passport bore the visa of the American consul in Italy for the purpose of a temporary visit by the plaintiff. When she then came to the United States she had formed no definite plan as to the future.

In October, 1925, the plaintiff returned to Rome with her brother, who discussed the situation with the defendant. All efforts for a reconciliation having failed a separation agreement was entered into by the plaintiff and defendant, which agreement, in accordance with the law and custom of Italy, was, on or about November 21st, 1925, submitted to a court known as the Civil Tribunal of Rome and after the President of the Tribunal had heard the husband and wife separately, and unavailingly attempted to bring about a reconciliation, was approved on January 20th, 1926. This agreement provided that the parties should live separate, the husband, therein referred to as the Duke, to have the use, as his dwelling, of a designated apartment in the Torlonia Palace, and to leave the entire apartment on the second floor free to the plaintiff, referred to as the Duchess. The latter agreed to pay, monthly, for the Duke's support the sum of 5,500 lire, also to pay him 10,000 lire for his expenses in setting himself up in the separate apartment. Provision was made regarding the maintenance and education of the children, at the expense of the Duchess, and the agreement contained, among further provisions, one that the Duchess would return (to Rome) together with the children during the ensuing month of January.

On December 7th, 1925, the plaintiff left Italy to return to the United States, and arrived about December 24th, entering under the same passport as in July, although she informed the immigration officers at New York that she intended to remain permanently in the United States. The trial court finds that when

the plaintiff left Italy she did so intending to abandon her domicil in Rome and to reside permanently in Greenwich, Connecticut. Upon her arrival in this country she rejoined her children at her mother's home in Greenwich and, the court finds, "from that time to the present has permanently and continuously resided at Greenwich with the intention of making it her permanent home and to constitute the same the place of her domicil." The validity of this finding is not affected by the fact that she made brief and temporary sojourns in the south in winter, and in the west and in Maine in summer, and, upon the evidence, it must stand. *Morehouse* v. *Morehouse,* 70 Conn. 420, 426, 39 Atl. 516.

The appellant further contends that, as a matter of law, the plaintiff cannot have a domicil independent of or other than that of her husband. The finding states that under the law of Italy the husband is entitled to the control of the wife to the extent that she must follow him wherever he chooses to establish his residence, except as such control may be modified or affected by a decree of an Italian court of competent jurisdiction.

In England the rule is that the domicil of the husband is the legal domicil of the wife, and there appears to be no exception thereto by which the wife, during coverture, can acquire a separate domicil for herself. *Warrender* v. *Warrender,* 9 Bligh N. S. 89, 5 Eng. Rep. (Reprint) 1227; note, Amer. & Eng. Anno. Cas. 1912D, p. 400. In a few early American cases the English rule was applied in its full rigor, but subsequently numerous exceptions have been recognized. Among these, one now of practically unanimous acceptance in the United States is that a wife may acquire another and separate domicil from that of her husband, giving jurisdiction for proceedings for divorce, where the the-

oretical unity of husband and wife has been dissolved, as where the husband has given cause for divorce, or there is a separation of the parties by agreement, or where cruel treatment or other similar misconduct on the part of the husband has produced a permanent separation. 2 Bishop on Marriage, Divorce & Separation, §127; 9 R. C. L. p. 545; 19 Corpus Juris, p. 31; Goodrich on Conflict of Laws (1927) p. 46.

The reason underlying this relaxation of the general doctrine is stated by Justice Holmes in *Williamson* v. *Osenton* (1913) 232 U. S. 619, 625, 58 L. Ed. 758, 762, 34 Sup. Ct. 442, as follows: "The only reason that could be offered for not recognizing the fact of the plaintiff's actual change [of domicil], if justified, is the now vanishing fiction of identity of person. But if that fiction does not prevail over the fact in the relation for which the fiction was created there is no reason in the world why it should be given effect in any other. However it may be in England, that in this country a wife in the plaintiff's circumstances may get a different domicil from that of her husband for purposes of divorce is not disputed and is not open to dispute." See also *Cheever* v. *Wilson*, 76 U. S. (9 Wall.) 108, 123, 19 L. Ed. 604.

In *Harteau* v. *Harteau* (1833) 31 Mass. (14 Pick.) 181, 185, 25 Am. Dec. 372, note, Chief Justice Shaw, speaking of the maxim that the domicil of the husband was the domicil of the wife, said: "It is probably a juster view, to consider that the maxim is founded upon the theoretic identity of person, and of interest, between husband and wife, as established by law, and the presumption, that from the nature of that relation, the home of the one is that of the other, and intended to promote, strengthen and secure their interests in this relation, as it ordinarily exists, where union and harmony prevail. But the law will recognize the

wife, as having a separate existence, and separate interests, and separate rights, in those cases where the express object of all proceedings is to show, that the relation itself ought to be dissolved, or so modified as to establish separate interests, and especially a separate domicil and home. . . . Otherwise, the parties in this respect would stand upon very unequal grounds, it being in the power of the husband to change his domicil at will, but not in that of the wife."

In *Ditson* v. *Ditson,* 4 R. I. 87, 108, it is pointed out that when a husband is guilty of such dereliction of duty in the marriage relation as entitles his wife to have that relation dissolved, she not only may establish a domicil in a different jurisdiction but, frequently, necessity may compel her to do so, according to the residence of her family or friends. "Under such circumstances she gains, and is entitled to gain, for the purposes of jurisdiction, a domicil of her own; and especially, if a native of the State to which she flies for refuge, is, upon familiar principles, readily redintegrated in her old domicil." The modern Federal and State cases disclose striking and decisive unanimity in recognition of this exception. See 19 Corpus Juris, p. 31, note 91; 9 R. C. L. p. 545, note 17; Amer. & Eng. Anno. Cas. 1912D, p. 399.

In Connecticut the precise point has not been directly decided. In *Sawtell* v. *Sawtell* (1845) 17 Conn. 284, the plaintiff wife separated from her husband in New York in consequence of his intemperance and cruelty and came to Connecticut to reside with friends. The court held that as she had not resided here for three years before the date of her petition for divorce she had not brought her case within the provision of the statute (Statutes of 1838, p. 186) that "if the petitioner shall have removed from any other state or nation, to this state, and shall not have statedly resided

in this state, three years next before the date of said petition, he or she shall take nothing by the petition, unless the cause of divorce shall have arisen subsequent to his or her removal into this state." This case has been cited, and should be regarded, as affording an inference that if the three years' residence requirement had been met a divorce would have been granted, notwithstanding that the defendant husband had no domicil in this state.

In *Morrill* v. *Morrill*, 83 Conn. 479, 71 Atl. 1, in an application for modification of an order respecting the custody of children, contained in a decree of divorce, it appears that the parties to the divorce action lived, after their marriage, in New York City, and that had continued to be the place of domicil of the defendant husband. The wife separated from her husband and, with her children, went to reside with her father in Greenwich, in this State. The opinion states: "There can be no question that the Superior Court in Fairfield County had full jurisdiction to render its original judgment granting a divorce and awarding the custody of the two children of the severed marriage relation to the wife. The plaintiff wife was domiciled in Greenwich, the children had for three years had their home there with her, and the husband appeared and submitted himself fully to the jurisdiction to which he now appeals" (for modification of the order). While the jurisdiction of the Connecticut court to grant the divorce itself does not appear to have been attacked, at any time, on the ground of lack of domicil on the part of the plaintiff wife, since no mere appearance and contest by a nonresident husband could supply a domiciliary requisite of the court's jurisdiction (Goodrich on Conflict of Laws, 1927, p. 286), the recognition by this court of the wife's domicil in Greenwich is significant as importing a right in a wife, cir-

cumstanced as was the plaintiff in that case, and as is the present plaintiff, to establish a separate domicil.

The recent case of *Foss* v. *Foss,* 105 Conn. 502, 136 Atl. 98, neither decides nor intimates, as claimed by the appellant, that, under the circumstances of that case, a wife cannot establish a domicil apart from that of her husband. The finding was to the effect that when the plaintiff returned from Wisconsin she intended to make her residence wherever her husband and child resided and that, then and thereafter until her divorce action was brought, she had no place of residence or abode other than her husband's home in Darien. Therefore, as this court states (p. 506), "the plaintiff *upon the facts found* could not have acquired a domicil independent of that of her husband," since facts indicating an attempt or intention on her part to acquire a domicil other than his were entirely wanting. As neither a domicil by him in this State nor facts creating such domicil were found by the trial court, domiciliary basis for jurisdiction was determined to be lacking.

Adoption of such an exception as we are now considering is especially logical and appropriate in a State where "the law has long recognized the wife as having a separate existence, separate rights, and separate interests." *Shute* v. *Sargent,* 67 N. H. 305, 36 Atl. 282. Such recognition has, of course, obtained to a notable extent in Connecticut. See General Statutes, §5274; *Mathewson* v. *Mathewson,* 79 Conn. 23, 63 Atl. 285; *Marri* v. *Stamford Street Railroad Co.,* 84 Conn. 9, 22, 78 Atl. 582; *Brown* v. *Brown,* 88 Conn. 42, 89 Atl. 889; *Bushnell* v. *Bushnell,* 103 Conn. 583, 131 Atl. 432. We hold, then, that a wife separated from her husband, by reason of conduct on his part justifying such separation, though he be domiciled in another State or country, is not precluded from establishing an inde-

pendent domicil in this State; indeed, we are convinced that this right has long been tacitly recognized and frequently given effect in divorce actions in our trial courts, although its existence has not, heretofore, been challenged on appeal.

Since domicil, as well as the other questions upon which the granting of a divorce depends, is governed by the laws of the forum in which the action is pending, the Italian law, above stated, pertaining to control of the wife by the husband, does not preclude the plaintiff from acquiring an independent domicil in Connecticut. Goodrich on Conflict of Laws (1927) p. 287.

The "separation agreement" made by the parties and approved by the Italian court, the finding states, has the force and effect of a judicial decree enforcible against each of the parties and operates as a condonation of any prior marital offense. However, we fail to find in it any inhibition upon the plaintiff as to the establishment of another domicil. It does not, expressly or by fair implication, require continued residence in Italy, on her part. Her undertaking to return, with the children, in January following was no more than evidential upon the question of her intention, at the time the agreement was made (November, 1925), as to her future place of residence, and the intent on which domicil was based is found to have had its inception subsequently and after other impelling reasons had intervened. The finding that this intention was formed on or before her return to this country in December, 1925, renders unnecessary a discussion of the appellant's contention that such intent must be contemporaneous with the entry upon the new place of residence.

The finding as to the cause for which the divorce was

granted is that "on various occasions during May, 1926, the defendant committed adultery with Maria Lorenzoni at Rome, Italy, and for some time prior thereto notoriously and openly maintained her as his mistress and lived in adultery with her." No subordinate facts as to the defendant's conduct in this regard are stated in the finding; those which the defendant seeks to have inserted are incomplete, and, standing by themselves, misleading. The entire narrative and situation disclosed by the evidence conclusively support the finding of ultimate fact which we have quoted, afford, in ample measure, significant indications of adulterous inclination, proof of which the appellant claims is lacking, and adequately exclude any reasonable explanation consistent with innocence. That the direct evidence as to the daily life, habits, and routine, and conduct of the defendant on certain days in May, was furnished by detectives and others whose services were engaged by the plaintiff to observe the same, pertains only to the credibility of these witnesses.

It is found that "under the Italian law, adultery on the part of the husband is not recognized either as a criminal act, or as an offense against the marital status, unless the husband maintains a woman other than his wife as a mistress in his own household, or in any other place in a notorious manner," and the appellant advances the claim that, unless the defendant's conduct was such, by reason of its notoriety, as to constitute an offense under this law, it affords the plaintiff no ground for divorce. However, the rule is well established that the courts of the State of the domicil may grant a divorce for any cause allowed by its laws, without regard to the place of the commission of the offense for which it is granted or to whether such offense constitutes a ground for divorce in the State in which it was committed. "In granting a divorce, the State of the domicil

exercises its powers to determine the civil status of the persons subject to its jurisdiction. The process of divorce is provided for because the law-making body deems it for the best interests of the parties and the State that, under certain conditions, which it sets out as grounds for divorce, individuals should no longer be compelled to maintain the relation of husband and wife." Goodrich on Conflict of Laws (1927) p. 287; *Cheely* v. *Clayton,* 110 U. S. 701, 705, 4 Sup. Ct. 328; *Rose* v. *Rose,* 132 Minn. 340, 342, 156 N. W. 664; *Gregory* v. *Gregory,* 78 Me. 187, 189, 3 Atl. 280. Therefore we are spared the necessity or occasion for discussing the consonance of the Italian law on this subject with our public policy and other conditions affecting its recognition, here, as a matter of international comity or otherwise, and since under our laws the element of notoriety of the adulterous relation is immaterial, the question as to whether the finding relating to that element should be eliminated or modified is of no essential consequence.

The appellant also contends that even if, as we have held above, a wife separated from her husband upon sufficient justification, may establish an independent domicil in this State, the facts of the present case do not afford sufficient justification for the plaintiff's abandonment of the defendant's domicil. Under the cases above cited, misconduct constituting cause for divorce manifestly affords ample justification for separation by the wronged wife from the offending husband. Although the "separation agreement" operated as a condonation of marital offenses occurring prior thereto, it clearly appears from the finding as to the cause for divorce, above quoted, that after the making of the agreement, the defendant openly maintained the Lorenzoni woman as his mistress and lived in adultery with her. Such conduct gave ample reason and war-

rant for the course adopted by the plaintiff and removed the bar of condonation which the separation agreement raised. Therefore there is no occasion to review the sordid details of a situation which was manifestly such as to be abhorrent and intolerable to any self-respecting wife and mother, especially to one reared and educated in contemplation of proper standards of morality and decency and of regularity in matrimonial relations.

Collateral attack upon the validity of the decree of the United States District Court admitting the plaintiff to citizenship is not available upon this record, and the principal object of its injection appears to be for evidential purposes on the question of domicil and as suggesting certain ethical considerations, in which latter field the defendant may not, with profit, invite comparisons.

The trial court's conclusions as to the domicil of the plaintiff and the existence of a legal ground for divorce are sustained.

There is no error.

In this opinion the other judges concurred.