## ROBERT E. BOARDMAN v. SHIRLEY E. BOARDMAN

SUPERIOR COURT       NEW LONDON COUNTY.       FILE No. 17924

Memorandum filed November 12, 1947.

*Allyn L. Brown, Jr.,* of Norwich, for the Plaintiff.

*Brown & James,* of Norwich, for the Defendant.

INGLIS, J. This is a habeas corpus proceeding brought by a husband against his wife to determine the custody of their minor child.

The parties were married on February 13, 1943, at Elmira, N. Y., and resided there together until January 20, 1946. On July 20, 1944, a son, John Harold Boardman, the subject of this litigation, was born to them. On January 20, 1946, the plaintiff, being temporarily out of employment because of a strike, brought his wife and child to her parents' home in Norwich. He obtained temporary employment in Norwich and remained there until March 3, 1946. At that time, the strike in Elmira having ended, he returned to that city and resumed his employment there. He has continued to reside in Elmira ever since. At all times since the marriage down to the present time his intention has been to make Elmira his permanent home, and there can be no question but that his domicil ever since the marriage has been at Elmira.

On the day before the plaintiff returned to Elmira the defendant announced that she would refuse to return with him. Ever since then she and the child have resided in Norwich, and it has been her intention to make Norwich her permanent home.

On May 2, 1947, the plaintiff instituted an action for separation against the defendant in the Supreme Court of the state of New York in Chemung County, in which Elmira is located. Service of process in that action was not made otherwise than by leaving a copy of the summons and complaint with the defendant at Norwich on May 15, 1947. The defendant made no appearance in that action, and on July 17, 1947, judgment was entered. That judgment decreed among other things that the plaintiff be awarded custody of the minor child as follows: "From the first day of July until the 31st day of December in each year hereafter until said child shall become regularly in attendance in the public schools; during all vacations of more than three days' duration after and during such times as said child may be in regular attendance at the public schools. During all other times, the mother, Shirley F. Boardman, is awarded and shall have the custody of said child." It also directed that, during such times as the child should be in the custody of the mother, the plaintiff should pay $5 per week for the support of the child. There has been no material change in the circumstances of the parties, so far as they have any bearing on the custody of the child since the entry of that judgment.

The custody of the child has not been turned over to the plaintiff in accordance with that judgment of the New York court. The child continues to be with the defendant at the latter's parents' home in Norwich. The defendant is employed as an operator by the Southern New England Telephone Company and works six to eight hours a day, so that most of the care of the child falls upon the defendant's mother, Mrs. Elizabeth H. Ulrich. If the plaintiff obtains the actual custody of the child he purposes to turn the care of him over to his mother and father, Mr. and Mrs. N. Harold Boardman, in Elmira, with whom the plaintiff himself now lives. Both the Ulrich and the Boardman homes are good homes in which to bring up the child and in fact are about equally good. The child, however, is of very tender years and, having lived in the Ulrich home for nearly two years, has become completely adjusted there. To remove him to Elmira at this time not only would take him from his mother, who is the one naturally to care for so young a child, but also would be very unsettling to the child. It is concluded therefore that it would be for the best interests of the child for him to continue on with his mother with, of course, the right of reasonable visitation in the plaintiff.

That being the conclusion, the question arises whether this court is precluded from entering judgment on that basis by reason of the judgment entered in New York in the separation action. It is of course well settled that under the full faith and credit clause of the United States constitution in cases of this sort, a judgment of the court of a sister state rendered in an action the subject matter of which was within its jurisdiction has the same standing everywhere that it has in the state where it is entered. If, under the law of that state, it is subject to modification, then in any other state it is subject to modification to the same extent. *Halvey* v. *Halvey*, 330 U. S. 610. But if, under the law of the state in which it was rendered, it may be modified only on the basis of changed conditions, then it must be enforced elsewhere without modification unless there has been such a change of conditions. *Freund* v.*Burns,* 131 Conn. 380. The law of New York permits modifications only where conditions have changed. N. Y. Civ. Prac. Act § 1170; *Freund* v. *Burns,* supra. In the present case, it having been concluded that there have been no substantial changes in the conditions bearing on the matter of custody, it follows that this court must accept as res adjudicata between the parties the judgment of the New York court provided that court, when it entered the judgment, had jurisdiction of the subject matter, i. e., the status of the minor child.

Whether it had such jurisdiction turns on the question whether the domicil of the child was in New York at the time the action was instituted. Restatement, Conflict of Laws § 117. It is, of course, well established that, at common law, the domicil of a legitimate child ordinarily followed that of his father. Restatement, Conflict of Laws, § 30; *Yarborough* v. *Yarborough,* 290 U. S. 202: *Glass* v. *Glass,* 260 Mass. 562. The reason for this is that the father is the "natural guardian, is entitled to the custody and services, and is responsible for the tutelage, discipline and support of such child." *Glass* v. *Glass,* supra, 564. That being the reason for the rule, the adoption of the joint guardianship statutes in the various states must have some effect upon it. These statutes, generally, like the one adopted in Connecticut in 1901 (General Statutes § 4794), provide that "The father and mother of every legitimate child under twenty-one years of age are constituted joint guardians of the person of such minor, and the powers, rights and duties of the father and mother in regard to such minor shall be equal." New York has a similar statute. It may be true that still the

primary duty to support the child is upon the father, but the mother likewise has the duty to support, and certainly, under the statutes, in all other respects the rights and duties of both parents toward a child are equal. As is said in *Pfeiffer* v. *Pfeiffer*, 97 Conn. 154, 157, "The plain purpose of the statute was to make the legal rights of the father and the mother equal as joint guardians. Though they live separate and a-part their legal rights as guardians remain equal."

That the adoption of such joint guardianship statutes re-moves all of the reason for the former rule that the child's domicil follows that of his father is recognized in the Restate-ment, Conflict of Laws, § 32. That section reads: "The minor child's domicil, in the case of· divorce or judical separation of its parents, is that of the parent to whose custody it has been legally given; if there has been no legal fixing of custody, its domicil is that of the parent with whom it lives." Although it is true that on its face this statement of the law applies only to cases where there has been a divorce or judical separa-tion, comment *a* thereunder makes it plain that in substance it is not so limited. That comment says: "By statute in several states the father and mother are constituted 'joint guardians' of their minor children and are equally entitled to their custody. Where that is the case, if the father and mother have separate domicils, a minor child takes the domicil of the parent with whom it lives."

When the reason for a rule of law ceases, then the rule itself ceases. It is therefore concluded that the law now is, in juris-dictions which have adopted the joint guardianship statutes, that, where a mother and father are living separately and each has established a separate domicil, the domicil of their minor legitimate children is at the place of domicil of the parent with whom the children reside. *Wear* v. *Wear*, 130 Kan. 205, 72 A. L. R. 425.

That being so, the next question to be passed upon is: What was the domicil of the defendant at the time the separation action was instituted? There again we are faced with the old common-law rule that the domicil of the wife ordinarily fol-lowed that of her husband. The reason for that rule was, as stated in *Torlonia* v. *Torlonia*, 108 Conn. 292, 297 quoting Mr. Justice Holmes in *Williamson* v. *Osenton*, 232 U. S. 619, 625: "The only reason that could be offered for not recognizing the fact of the plaintiff's actual change [of domicil], if justified,

is the now vanishing fiction of identity of person." That fiction is now obsolete because of the general adoption of the Married Women's Property Rights Acts. It is now very generally held that, under certain circumstances, at least, a married woman may obtain a domicil of her own independent of that of her husband. *Torlonia* v. *Torlonia, supra.* The law is stated in the Restatement, Conflict of Laws, § 28, as follows: "If a wife lives apart from her husband without being guilty of desertion according to the law of the state which was their domicil at the time of separation, she can have a separate domicil." It is of course apparent that that statement does not apply to the present case because no evidence was adduced on the question whether the defendant here was justified in living apart from the plaintiff, and therefore no finding is made on that subject. However, the Restatement adds a caveat to the above statement of the law. That caveat reads: "The Institute expresses no opinion whether a wife guilty of desertion according to the law of the state which was her domicil at the time of separation, may not acquire a domicil in another state." Although no finding is made in this case on the question whether the defendant was guilty of desertion, we are in the position where we must determine whether the rule upon which the Institute expresses no opinion is the law of this case. Failing a finding that the defendant was justified in living apart from her husband, we must face and decide the question whether without such justification she may obtain a separate domicil.

Although no authority has been cited or found directly upon this question, it is clear that the law now is that she may obtain such a domicil. The old fiction of the identity of a married couple is lost. In Connecticut "the law has long recognized the wife as having a separate existence, separate rights and separate interests." *Torlonia* v. *Torlonia,* 108 Conn. 292, 300, and cases cited. Under such circumstances, it would be anomalous to hold that because of the old fiction of identity of persons, and for no other reason, the wife's domicil is always that of her husband even though in actuality they are living apart. The law now is that, when actually living separate and apart from her husband, no matter for what reason, a wife is capable of establishing a separate domicil.

It is therefore concluded that from and after March 3, 1946, the defendant's domicil was at Norwich in this state and that, the child being with her, the child's domicil was also there both at the time the separation action was started and at the time

judgment therein was rendered. It follows that the New York court had no jurisdiction of the subject matter of the separation action insofar as it pertained to the custody of the child. It further follows that the judgment of the New York court on that subject is not binding on this court in this proceeding.

Judgment may enter awarding the custody of the child John Harold Boardman to the defendant, but with the right of reasonable visitation in the plaintiff, and ordering the plaintiff to pay the defendant $5 per week for the support of the child, commencing forthwith.