## VIOLA M. SCHAEFFER *v.* HUGO J. M. SCHAEFFER.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued December 2, 1941—decided March 6, 1942.

*Frederick C. Hesselmeyer* and *Thomas A. Grimes*, for the appellant (plaintiff).

*Daniel D. Morgan*, with whom was *Alfred F. Celentano*, for the appellee (defendant).

ELLS, J. A principal question of law involved in this appeal is whether a Connecticut court must give full faith and credit to a decree of divorce obtained in Florida by the husband, formerly a resident of Connecticut, from his wife, still residing in Connecticut, based on service of process upon her by ordinary mail. She entered her special appearance in the divorce action for the purpose of contesting the jurisdiction of the Florida court on the ground that the husband had not established a residence in that state sufficient to give the court jurisdiction, was fully heard, and the issue was decided against her. She did not appeal, and took no further part in the proceedings. The case was referred to a special master to find the facts. He found that the wife had been guilty of extreme cruelty and willful desertion, and upon his report the court entered a final decree of divorce. The issue arises in an action for support brought in Connecticut by the wife and a plea by the defendant that the Florida divorce terminated his obligation to furnish support. He also filed a cross-complaint asking for an adjudication of the property rights of the parties. The trial

court held that if the validity of the divorce decree could be re-examined in this case it must be found that although the husband had been in Florida for the required period of ninety days he had not acquired a legal domicil there, because during that period his intention was to return to Connecticut unless he soon found permanent employment in Florida; but that the judgment of the Florida court that he had acquired a residence in that state sufficient to comply with the requirements of its statutes was conclusive, owing to the wife's appearance in the Florida court and its decision of the issue. The court further found that the Florida court had jurisdiction of the marital domicil and that full faith and credit must be given to its decree, and entered judgment for the defendant upon the complaint. It also adjudicated the property rights of the parties. The plaintiff wife appealed to this court.

The questions involved were much in controversy in the various state courts until settled by decisions of the United States Supreme Court. The controlling cases are *Haddock* v. *Haddock,* 201 U. S. 562, 26 Sup. Ct. 525, and *Davis* v. *Davis,* 305 U. S. 32, 59 Sup. Ct. 3. In the *Haddock* case the abbreviated facts were these: the wife, a resident of the state of New York, sued the husband for divorce in that state in 1899, and there obtained personal service upon him. The answer alleged, among other things, that the husband had, in 1881, obtained in a court of the state of Connecticut a divorce which was conclusive. At the trial, the Connecticut divorce judgment was offered by the husband and was objected to because the Connecticut court had not obtained jurisdiction over the person of the defendant's wife, as the notice of the pendency of the petition was by publication and she had not appeared in the action. There was a second ground of

objection not applicable to the present situation. Upon appeal the Supreme Court of the United States held that the decree of the Connecticut court, rendered under the circumstances stated, was not entitled to obligatory enforcement in the state of New York by virtue of the full faith and credit clause of the federal constitution. It said, however (p. 570): ". . . where a *bona fide* domicil has been acquired in a State by either of the parties to a marriage, and a suit is brought by the domiciled party in such State for a divorce, the courts of that State, if they acquire personal jurisdiction also of the other party, have authority to enter a decree of divorce, entitled to be enforced in every State by the full faith and credit clause," citing *Cheever* v. *Wilson,* 9 Wall. (76 U. S.) 108. The doctrine of the *Haddock* case is that the courts of one state are not required to give full faith and credit to a decree of divorce secured in another state unless the plaintiff has acquired a residence there sufficient to comply with the requirements of its laws as to the jurisdiction of its courts over divorce and (1) the defendant has appeared, or (2) process has been served on the defendant in that state, or (3) the marital domicil was in that state.

The first question is whether the decision of the Florida court that the defendant had acquired a residence in that state sufficient to comply with its laws concerning jurisdiction over divorce is binding upon the courts of this state in view of the fact that the plaintiff filed a special appearance in that court to contest the issue and did actively contest it, and it was decided against her. The recent *Davis* case, supra, decides this question. The applicable facts are essentially similar. The husband, having obtained a divorce a mensa et thoro from his wife in the District of Columbia, went into Virginia and after he had remained

there for the statutory period sued for an absolute divorce. The wife, who had continued her residence in the District of Columbia, entered the action specially for the sole purpose of contesting the jurisdiction of the Virginia court on the ground that the husband was not a bona fide resident of that state. After a full hearing, the Virginia court decided against her, found that the husband was a bona fide resident of Virginia and held that it had jurisdiction. Later it granted the divorce. The husband some years later came into the District of Columbia court and asked for a modification of the order for support which had been entered against him in the divorce a mensa et thoro, setting up the Virginia divorce. The Supreme Court, reversing the Court of Appeals for the District of Columbia, held that, having submitted to the Virginia court the question of her husband's domicil, the wife was concluded by the judgment of that court on the subject. It was res judicata against her and she could not again litigate that matter in the courts of another jurisdiction. The court, by Mr. Justice Butler, says in part (p. 40): "As to petitioner's domicil for divorce and his standing to invoke jurisdiction of the Virginia court, its finding that he was a bona fide resident of that State for the required time is binding upon respondent in the courts of the District. She may not say that he was not entitled to sue for divorce in the state court, for she appeared there and by plea put in issue his allegation as to domicil, introduced evidence to show it false, took exceptions to the commissioner's report, and sought to have the court sustain them and uphold her plea. Plainly, the determination of the decree upon that point is effective for all purposes in this litigation." The court therefore held that the Virginia decree was entitled to full faith and credit in the courts of the District of Columbia.

The decision is placed squarely upon the ground not that the special appearance of the defendant was enough to give the court the right to pass on the question of jurisdiction but that in consequence of that appearance, having actively contested the issue of jurisdiction, the judgment of the court became one entitled to full faith and credit upon that question. It was not the special appearance which brought that about but the actual contest of the question. This was in harmony with earlier decisions. The court cited, in support of that conclusion, *Baldwin* v. *Traveling Men's Association,* 283 U. S. 522, 51 Sup. Ct. 517, which directly held that where, as a consequence of a special appearance, a defendant actively contested the question of jurisdiction, the judgment that the court had jurisdiction was entitled to full faith and credit, and it cited several federal cases in support of that proposition.

The court has found, upon sufficient evidence, that before the divorce action was begun the plaintiff tore up her marriage certificate and sent it, together with her wedding ring and the keys to their house, to the defendant, that this was done with the intention of indicating to him that so far as she was concerned their marriage was at an end, and that he so understood it. It is also found that thereafter she embarked upon a campaign of harassment, telegraphing a man with whom the defendant was associated in business, stating that $10,000 was missing, with the implication that he had misappropriated it, and, although she knew where he was, reporting to the police that he was missing, thus causing him embarrassment when the Florida police looked him up. The court concluded that the effect of this was to signify to him that their marital status had terminated and she had thereby consented to his acquiring a separate home;

also, upon the basis of the facts stated and others, it has found as to her misconduct towards him that she had, before the divorce action was begun, abandoned him and ceased to have the right to object to his acquisition of a separate home. These conclusions could be reasonably reached upon the facts proven. The defendant was entitled to acquire a residence apart from his wife and the plaintiff by her conduct subjected the continuance of the marital status to the determination of the courts of Florida. Restatement, Conflict of Laws, § 113; 1 Beale, Conflict of Laws, p. 501. The plaintiff received notice of the pendency of the divorce action, so far as appears, in accordance with its laws, and in fact made a special appearance therein. As the Florida court had jurisdiction of the marital status, such notice was all that was required to constitute the judgment of that court one which was entitled to full faith and credit in the courts of this state. *Atherton* v. *Atherton*, 181 U. S. 155, 171, 21 Sup. Ct. 544.

While the *Haddock* case does not specifically hold this to be so, such a conclusion is reasonably to be implied from it. 1 Beale, op. cit., p. 498. In the *Davis* case, where the matrimonial domicil had been in the District of Columbia but the husband had subsequently moved to Virginia and acquired a residence there, the court said (p. 41): "In this case, the wife has been adjudged by the decree *a mensa et thoro,* on which she relies, to have disrupted the marital relation. And by the decree of the Virginia court, the enforcement of which she opposes, she is adjudged to have persisted in desertion of petitioner for a period more than sufficient to entitle him under the laws of that State to dissolution of the bonds." The court then went on to distinguish the *Haddock* case upon several grounds, among them stating as regards the wife in that case: "There was no suggestion that she

was at fault or did anything to disrupt the marital relation. In this case, there exists none of the reasons on which we held the New York court not bound by the full faith and credit clause to enforce in that State the husband's Connecticut divorce. Petitioner frankly presented to the Virginia court the grounds on which he sought release. He gave respondent actual notice of the suit. She appeared, specially as she maintains, and raised and tried the question whether he had standing to sue. In view of these facts, and of her conduct, adjudged repugnant to the marital relation, it would be unreasonable to hold that his domicil in Virginia was not sufficient to entitle him to obtain a divorce having the same force in the District as in that State." We construe this portion of the opinion as in effect adopting the principle which we have stated above. It is true that the court then went on to hold that, while the wife had nominally made only a special appearance in the Virginia court, she had in effect appeared generally there. We regard that ruling as in the nature of an additional reason why the judgment of the Virginia court was entitled to full faith and credit rather than as the only basis upon which the court reached the conclusion it did.

There is no error in the action of the trial court in finding the issues on the complaint in favor of the defendant.

The cross-complaint presented the claim that the parties, practically coincident with their marriage, agreed orally that all property which either of them then had or thereafter acquired would be community property in which each owned an equal share, that from time to time they reiterated this agreement, and that in all their dealings with each other they acted upon this oral agreement; and the acquisition and ownership of both real and personal property are alleged.

The trial court found that there was no agreement of any kind with reference to the real estate, and that if there had been a verbal agreement it would have been unenforceable because of the Statute of Frauds, as it was oral and there was no part performance. As to the personal property it found that in making the joint and several deposits and in purchasing the shares of stock in question it was the intention of the parties to accumulate a fund to be used for their joint family purposes and that such intention was often expressed in verbal agreements between the parties, made at the time the deposits were made and the stock purchased. The court concluded that they had been engaged in a joint enterprise in the nature of a joint adventure, and that the proceeds of the fund, upon the dissolution of the family, belonged to the parties jointly.

The plaintiff contends that there was but one agreement alleged in the cross-complaint, that it applied to real and personal property, that it was indivisible and that an entire contract cannot be within the statute as to part of it and without the statute as to the residue (*Grant* v. *Grant,* 63 Conn. 530, 538, 29 Atl. 15). Although the agreement alleged was as to all property, the proof was that it applied only to personal property; the conclusion as to the Statute of Frauds was of no consequence if the latter was true, and was evidently added for good measure. If the finding stands, as it must, that the agreement applied only to personal property, it would not be invalidated on the ground that, having alleged an agreement as to all the property, the defendant proved only an agreement as to personal property.

The real question is whether, under an allegation of an express agreement that the property should be community property, it is a departure to give judgment based not upon an express agreement but upon

a finding of the intention of the parties to accumulate a fund to be used for their joint family purposes, which would at most give rise to an implied contract— using implied in its restricted meaning. This does not constitute a fatal variance. *Scott* v. *Scott,* 83 Conn. 634, 641, 78 Atl. 314; *Blakeslee* v. *Water Commissioners,* 121 Conn. 163, 187, 183 Atl. 887. The action on the·cross-complaint was essentially one for an accounting; the whole matter was gone into on the trial, and the variance between allegations and proof was not in a matter "essential to the charge or claim" (*Nocera* v. *LaMattina,* 109 Conn. 589, 593, 145 Atl. 271); nor does it appear that the plaintiff was prejudiced in any way in making her defense. *Pierce, Butler & Pierce Mfg. Corporation* v. *Enders,* 118 Conn. 610, 613, 174 Atl. 169; *Berkowitz* v. *Kasparewicz,* 121 Conn. 140, 147, 183 Atl. 693; Conn. App. Proc. 51, § 39. If the trial court was right in its decision, as we find it was, it would be unfortunate to require a new trial for this claimed defect. Moreover, this point was not raised at the trial. The claims of law made by the plaintiff do not fairly include it.

The trial court found that the record ownership of the stock is impressed with a resulting trust. This was a mere incident to working out the rights of the parties, and even if it was omitted, the other conclusions would be enough to sustain the judgment.

The trial court was correct in its adjudication of the property rights of the parties under the cross-complaint, and the judgment is in proper form.

There is no error.

In this opinion the other judges concurred.