ROBERT C. RONSTADT v. LAUREL V. RONSTADT ET AL.

SUPERIOR COURT      NEW HAVEN COUNTY      FILE No. J 1912

* 15 *Conn. Sup.* 104

Memorandum filed February 11, 1947.

*William Gitlitz,* of Milford, for the Plaintiff.

*Edward L. Reynolds,* of New Haven, for the Defendants.

QUINLAN, J. This proceeding comes to the court by a petition of habeas corpus. Under the rules of practice, it is a domestic relations case. Prior to August 28, 1945, the plaintiff, Robert C. Ronstadt, his wife, Laurel V. Ronstadt and the minor child, Robert C., Jr., resided in Milford, Connecticut. On said date the plaintiff was in the military service.

Proceeding under § 4794 of the General Statutes the plaintiff herein made application to the Probate Court of Milford alleging that his wife was an unfit person, and prayed for the appointment of Loretta J. Varen, maternal grandmother or of some suitable person as guardian of the person of said minor until the plaintiff was discharged from the military service. The order of the Probate Court ordered said removal and appointed Loretta J. Varen to be guardian of the person of said minor.

A few days before filing this application this plaintiff went to New York where his wife was employed and living, and asked her to sign a paper which obviously was the waiver on the printed form of application. When she saw the allegation as to her unfitness she threw the paper in his face and refused to sign. This was strongly suggestive evidence that the application would be resisted. At the Probate Court, although the plaintiff here knew of his wife's whereabouts, according to the clerk of the court he did not reveal this knowledge, but instead gave a post office box number in Devon through which his wife received allotment checks.

On December 4, 1945, the father of said minor without assigning any reason therefor, although the statute provides that the removal of a third person guardian shall be upon a finding that "such removal and the appointment of a new guardian to be for the best interests of such child," made application for the removal of Mrs. Varen, as guardian.

The petitioner herein was discharged from the military service on January 12, 1946.

On January 15, 1946, the plaintiff with said child left Milford for California and in January went to Reno, Nevada, and returned to Calfornia in early March, having been employed in Reno, but avowed his intention of returning to Reno in April.

In September, 1946, the plaintiff herein commenced a divorce proceeding in California alleging that the parties separated on August 25, 1945. Under the law of California "a divorce must not be granted unless the plaintiff has been a resident of the state one year, and of the county in which the action is brought three months next preceeding the commencement of the action." Cal. Civ. Code (Deering, 1941) § 128. In that proceeding the defendant, Laurel V. Ronstadt entered a general appearance.

The child was born January 3, 1942, and from the age of four months resided in the home of his maternal grandparents, until he was taken by his father to California in January, 1946. His mother discovered his whereabouts in April and after a visit to California in October, 1946, she returned taking the child to Connecticut where he has since remained. From this brief recital of facts, certain legal questions are posed. They may best be considered in reverse order because reliance is first placed on an exemplified copy of a pendente order in the California court awarding custody to the plaintiff, entered after the departure of Mrs. Ronstadt and her son.

An order and decree subject to modification or annulment is not a final and conclusive judgment which the courts of this state are bound to enforce. *Sistare* v. *Sistare,* 80 Conn. 1; and see *Hamilton* v. *Hamilton,* 113 Conn. 306, 310. Moreover, the question of domicil and residence being jurisdictional in nature may be re-examined here. *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689. I find not only that the petitioner had not been in any part of the west a year at the commencement of his divorce action, but he certainly had not been in California the required length of time. And as was said in the case of *Mills* v. *Mlls,* 119 Conn. 612, 618, "In order to possess the requisite intention, one must be able to say, not, this is to be my home, but, this is now my home." Furthermore, no mere appearance and contest by a nonresident could supply a domiciliary requisite of the court's jurisdiction. *Torlonia* v. *Torlonia,* 108 Conn. 292, 299; and see *Schaeffer* v. *Schaeffer,* 128 Conn. 628.

For these reasons the court does not feel bound by the California order. In passing it may be suggested that the probate

proceedings at Milford may well have been a factor reflected in the California order, because it appears no evidence was heard in California.

Whether or not this was the case, it becomes necessary to now examine the action of the Milford Probate Court to see how far the Superior Court may proceed with its inquiry. It appears that an imposition was practiced on the Probate Court which thwarted the appearance of the defendant Laurel. It is true that within a day or two she was informed her mother had been appointed guardian. Whether this quieted her apprehensions, the fact is she did not appeal from the order and, perhaps as hereinafter appears, could have ignored the order.

We now come to an examination of § 4794. Probate courts in Connecticut are courts of limited jurisdiction and therefore their decrees are not conclusive as to the fact of jurisdiction, but may be collaterally attacked; *Lewis* v. *Klingberg,* 100 Conn. 201, 204; and such courts have no power except those expressly granted. *Lewis* v. *Klingberg,* supra. Under the circumstances of the order of notice the Probate Court's act was void for want of jurisdiction. *Lewis* v. *Klingberg,* supra. If this were not so, the procedure taken can have one of two results either of which leaves the same end result. That is, the application and proceeding, exhibit A, were for the removal of the mother. Under the statute when but one parent is removed the other becomes the sole guardian. "It is only 'if both parents or the sole living parent shall be so removed' . . . that the Court of Probate is authorized to appoint a guardian of the person of a minor whose parent or parents are living." *Lewis* v. *Klingberg,* supra, 206. If it be said that because of the war emergency the court's action was warranted the simple answer is the statute makes no such provision. Assuming without granting that it was allowable, under the dictum in *Kelsey* v. *Green,* 69 Conn. 291, 298 where similarly a father had made application for the appointment of a third person, our court said: "By that appointment, made on that application, it is very likely that the father has excluded himself from the right to claim the custody of the son." It appears rather that the order "was void and of no effect, for the reason that the Court of Probate was without power to make the appointment. If so, neither the minor nor the defendant would be bound to comply with and conform to it . . ." *Ferrie* v. *Trentini,* 111 Conn. 243, 251. It

must be borne in mind that the Probate Court was approaching this entire proceeding on a basis which the evidence here shows to be surrounded by suspicion. The Probate Court knew nothing of this, and with the suggestion of the maternal grandmother as guardian could very well and probably was put off guard and disarmed, including technical niceties.

Again assuming my conclusion to be erroneous and the Probate Court to be correct. Under that assumption the maternal grandmother would be guardian. What follows? An application, (exhibit B) by the plaintiff here to have the maternal grandmother removed, and the plaintiff (father) appointed guardian. This very application confirms my legal construction. It must have been considered by the applicant and the court that he was not sole guardian by virtue of the provisions of § 4794, but had removed himself by exhibit A. But again we must look at the statute. There we see that there must be a finding that such removal is for the best interests of the child. No such finding was made. Indeed, no allegation of cause of removal is given in the application. Mrs. Varen was simply removed. So, it is seen there was no authority for that action with the consequent result, attached by me to her original appointment. If she was properly appointed, she was not regularly removed. In either event, these probate doings are more important, in view of my construction of them, as to their bearing on the child's status before this court and the court's right to proceed.

Since 1901, the rights of both parents have been equal; *Hogewoning* v. *Hogewoning,* 117 Conn. 264; and the equality of rights accorded to each parent as joint guardians of the persons of their minor children by § 4794 continues though the parents live separate and apart. Their rights, however, are subordinate to the welfare of the child. *Pfeiffer* v. *Pfeiffer,* 99 Conn. 154.

The child is in the state of Connecticut in the same abode he has enjoyed since 1942. The mother is a resident here, as is the maternal grandmother. Both the California Law, Cal. Civ. Code (Deering, 1941) § 129, and our law recognize the possibility of separate domiciles and residences by two parents who have separated. The plaintiff father brought this habeas corpus. In the case of *Freund* v. *Burns,* 131 Conn. 380, there was no question about the validity of the New York decree and the

court is not unmindful of the intimation contained in that opin-
ion. Whether this child is under the guardianship of his grand-
mother, Mrs. Varen, because of her improper removal, or under
the joint guardianship of his father and mother, because of the
defect in notice, both the grandmother and mother are residents
of Connecticut.

A state can exercise through its courts jurisdiction to deter-
mine the custody of children or to create the status of guardian
of the person only if the domicil of the person placed under
custody or guardianship is within the state. Restatement, Con-
flict of Laws, § 117.

The minor child's domicil in the case of divorce or judicial
separation of its parents is that of the parent to whose custody
it has been legally given; if there has been no legal fixing of
custody, its domicil is that of the parent with whom it lives, but
if it lives with neither, it retains the father's domicil. Restate-
ment, op. cit., § 32.

This court recognizes the natural right of a parent to his
child. It is cognizant that within the last week a learned or-
ganization has proclaimed as in sight the end of the family as
known in western civilization. The court views the trend with
alarm and apprehension. Nevertheless, on both sides there
are failures and tendencies which imperil the welfare of this
child, a matter of paramount importance. The mother is intelli-
gent and apparently has talent, but in the past at least has had
butterfly propensities. Spontaneous reactions in the court room,
however, over a period of three weeks evidenced maternal in-
stincts, all of which could not have been the result of dramatiza-
tion. Yet she lacks the required stability. The father, since
his mariage, has always sought and received aid and comfort
from the maternal grandparents. On one occasion he telegraph-
ed 3000 miles for assistance when his own family lived within
150 miles. He is without the ability, if he sincerely has the
disposition, to properly care for this child. He has been indis-
creet in his own conduct, and has failed in the judgment which
should direct a father in the choice of amusements for the child.
He has been activated in his pursuit of the child by a jealous
interest in his wife.

Whatever effect the action in the Probate Court may have
had on the California courts, it is in evidence that changed con-
ditions occurred since the child's trip to California with him.
Slight provision in the way of clothes was made for the boy; his
weight increased nine pounds in a short time after his return

to Connecticut; at times he exhibited fear of his father. The child's teeth were in dire need of attention, and have received it at the mother's insistance.

The father's choice of the maternal grandmother, in the Probate Court, supplemented by his testimony as to her womanly virtues and housekeeping ability, confirm the spontaneous evidences of intense devotion, thought and affection observed of her toward the boy in the court room. The same might be said of the grandfather, who, incidentally has a continuous record of twenty-two years employment with the Connecticut Light & Power Company. There is no doubt in the court's mind of the unquestioned desirability of Mrs. Varen having imposed upon her the care, custody and responsibility of Robert, Jr. subject to reasonable right of visitation in both parents.

Judgment for the defendants and that the child be restored to the custody of his maternal grandmother.