ROBERT E. BOARDMAN *v.* SHIRLEY E. BOARDMAN

MALTBIE, C. J., JENNINGS, ELLS, DICKENSON and MELLITZ, JS.

Argued May 4—decided November 5, 1948

*Allyn L. Brown, Jr.,* for the plaintiff (appellant).

*Arthur M. Brown,* with whom, on the brief, was *Charles V. James,* for the appellee (defendant).

MALTBIE, C. J. The only question presented by this appeal is whether a court of this state had the right in a habeas corpus action to determine the custody of a minor child of the parties who, since their separation, has lived with the mother, the defendant, in this state, despite the fact that the father, the plaintiff, obtained in New York, his domicil and the marital domicil, a separation decree in which an order dividing the custody of the child between the parties was made. The action was brought by the father to secure possession of the child. The trial court awarded custody to the defendant, except that a right of visitation at all reasonable times was granted the plaintiff. The plaintiff has appealed.

The undisputed facts relevant to the issue before us may be briefly stated. In 1943 the parties were married in Elmira, New York, and lived there as husband and wife until 1946. A son was born to them in 1944. In January, 1946, the plaintiff, being temporarily out of employment because of a strike at the place where he had been working, brought the defendant and the son to her parents' home in this state, where he obtained temporary employment. On March 3, 1946, having been notified that the strike was terminated, he returned to Elmira. The life of the parties while living in New York had been marred by marital difficulties. The defendant determined not to return to New York with the plaintiff but to make Norwich her permanent home, and so informed the plaintiff. She has resided in Norwich since that time. The child has resided with her. It was, when her husband returned to Elmira, and has since been, her intention to bring an action for divorce in this state as soon as she has lived here long enough. The plaintiff has at all times intended to make his permanent home in Elmira. For about two months after his return there he maintained

the apartment where the parties had previously lived. In May, 1947, he brought an action against the defendant for a judgment of separation and custody of the child. The action was based upon abandonment. See N. Y. Civ. Prac. Act § 1161. The complaint was served on the defendant only by leaving a copy of it and a summons with her in Connecticut, and she made no appearance in the action. A judgment was rendered in the New York action in the plaintiff's favor, and in it the custody of the child was awarded to each of the parties for a portion of each year. The decree has not been modified, nor has there been any material change of circumstances relevant to the custody of the child since it was rendered.

In *Freund* v. *Burns*, 131 Conn. 380, 383, 40 A. 2d 754, decided in 1944, we had before us a habeas corpus action seeking the custody of minor children. The parents had been divorced in New York when the family resided there, and in the decree there was a provision as to the custody of the children, later modified in certain respects. The mother remarried and moved to this state. The issue presented to us was whether in the habeas corpus proceeding in our court the decree in the New York action as to the custody of the children must be given effect. Examining the law of New York we concluded that under its statutes such a decree could not be modified at the discretion of the court but only where there had been a material change of circumstances. We held that the decree in that state must be given the same effect here that it would have in New York and that our court could not render a judgment at variance with it unless there had been such a change of circumstances. We have found no case in the New York courts since our decision which indicates that the law of that state is different from what we then found it to be; and the decision in

the *Freund* case would control the present action unless it be by reason of a consideration advanced by the defendant. No question arose in that case as to the jurisdiction of the New York court to determine the custody of the children. In the case now before us the defendant claims that the New York court had no jurisdiction to include in its decree a provision as to the custody of the child of the parties.

The statutes of New York provide: "A married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them." N. Y. Domestic Relations Law § 81. In *People* v. *Brooks,* 35 Barb. (N. Y.) 85, 92, it is stated, obiter, that this statute only applies as long as husband and wife live together. Later New York decisions do not recognize that limitation. In *Matter of Thorne,* 240 N. Y. 444, 449, 148 N. E. 630, it is said: "The identity of person of husband and wife is no longer a fetish of the law. The residence of the infant is no longer exclusively that of the father. It may be the residence either of the father or the mother. As the mother is the joint guardian of the children with the husband, if the wife has selected her own domicile, as she may, whenever it is necessary or proper for her to do so . . . and the child lives with her, the domicile of the mother is for the time being the domicile of the child. Her rights of custody are equal to those of the father." It is, however, pointed out in that case (p. 448) that the mother's guardianship terminates when a proper decree of divorce with an order as to the custody of a child has been rendered. In this state our statutes concerning guardianship first state that the residence of a minor shall mean his actual residence, not that imputed to him by the residence of his parents or guardian. General Statutes § 4793. Section 4794 then provides: "The father and mother of every

legitimate child under twenty-one years of age are constituted joint guardians of the person of such minor, and the powers, rights and duties of the father and the mother in regard to such minor shall be equal." The right to the custody of a minor child is one of the principal attributes of a guardianship of the person. *Kline* v. *Beebe,* 6 Conn. 494, 500; *Selden's Appeal,* 31 Conn. 548, 553; 25 Am. Jur. 41. Under these statutes each of the parties had an equal right to the custody of their son; *Dunham* v. *Dunham,* 97 Conn. 440, 442, 117 A. 504; *Goshkarian's Appeal,* 110 Conn. 463, 466, 148 A. 379; that right continued after their separation; *Pfeiffer* v. *Pfeiffer,* 99 Conn. 154, 157, 121 A. 174; *White* v. *White,* 77 N. H. 26, 29, 86 A. 353; and the right of each parent was independent of that of the other. *Illingworth* v. *Madden,* 135 Me. 159, 166, 192 A. 273. The defendant claims that she had acquired a domicil in Connecticut, that this was also the domicil of the child when the separation suit was brought and decided in New York, and that therefore the court in that state lacked jurisdiction to make a decree as to the custody of the child to which our courts are bound to give full force and effect.

The domicil of the plaintiff was at all times in New York and that was the state of the matrimonial domicil. Upon the basis of the copy of the complaint and the summons left with the defendant in this state, the New York court had jurisdiction to enter a judgment of separation which was entitled to full faith and credit in this state. *Atherton* v. *Atherton,* 181 U. S. 155, 21 S. Ct. 544, 45 L. Ed. 794; *Haddock* v. *Haddock,* 201 U. S. 562, 571, 26 S. Ct. 525, 50 L. Ed. 867; *Williams* v. *North Carolina,* 317 U. S. 287, 299, 63 S. Ct. 207, 87 L. Ed. 279; *Estin* v. *Estin,* 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1078; *Schaeffer* v. *Schaeffer,* 128 Conn. 628, 634, 25 A. 2d 243. By the great weight of author-

ity, however, such service does not give a court jurisdiction to determine the custody of a child domiciled in another state. *In re Volk,* 254 Mich. 25, 32, 235 N. W. 854; *Weber* v. *Redding,* 200 Ind. 448, 454, 163 N. E. 269; *Seeley* v. *Seeley,* 30 App. D. C. 191, 193; *Kruse* v. *Kruse,* 150 Kan. 946, 947, 96 P. 2d 849; *Elliott* v. *Elliott,* 181 Ga. 545, 182 S. E. 845; *Callahan* v. *Callahan,* 296 Ky. 444, 445, 177 S. W. 2d 565; *Dorman* v. *Friendly,* 146 Fla. 732, 737, 1 So. 2d 734; *Boens* v. *Bennett,* 20 Cal. App. 2d 477, 480, 67 P. 2d 715; see *Wear* v. *Wear,* 130 Kan. 205, 217, 285 P. 606; Goodrich, Conflict of Laws (2d Ed.) § 132; 2 Beale, Conflict of Laws, § 144.3; Restatement, Conflict of Laws, § 117. In *Estin* v. *Estin,* supra, 545, it is said: "But the fact that marital capacity was changed does not mean that every other legal incidence of the marriage was necessarily affected."

In *Yarborough* v. *Yarborough,* 290 U. S. 202, 54 S. Ct. 181, 78 L. Ed. 269, the parents of a minor daughter lived in Georgia; the mother went to North Carolina, where the daughter joined her; while they were in that state the father brought an action for divorce in Georgia and the mother filed an answer and a cross-suit; subsequently, she moved with the child to South Carolina. The father recovered judgment for divorce and thereafter, in the same action, an order (p. 206) was made directing the transfer of certain property he owned to a trustee to be used for the benefit of the daughter, "in full settlement of temporary and permanent alimony . . . and . . . of all other demands of every nature whatsoever between the parties." Subsequently, the daughter, by her next friend, brought an action in South Carolina to secure an order that her father be required to make provision for her education and maintenance. The father pleaded in bar of the action the judgment he had obtained in

Georgia. The Supreme Court held that the Georgia judgment must be given full faith and credit by the courts of South Carolina and sustained the claim of the father. One of the contentions made by the daughter in the South Carolina action was that she was not a resident of Georgia when the judgment in the divorce action was rendered, but the Supreme Court held (p. 211) that her domicil was that of her father, that she was not capable of acquiring a new domicil by her own act, that neither her temporary residence in North Carolina when the suit was begun nor her removal with her mother to South Carolina before judgment was rendered effected a change of her domicil, that the status of a minor is ordinarily determined by the law of the place of the father's domicil, and that her residence in South Carolina did not entitle the courts of that state to grant the relief demanded. The court based the decision upon the fact that by the law of Georgia the domicil of the child was that of her father. Under a Georgia statute the domicil of an unemancipated minor is that of his father. *Jackson* v. *Southern Flour & Grain Co.*, 146 Ga. 453, 454, 91 S. E. 481. In North Carolina the common-law rule that the father has the paramount right to the control and custody of his minor children was still in effect. *Newsome* v. *Bunch*, 144 N. C. 15, 16, 56 S. E. 509. Under the law of South Carolina, however, where the mother and child lived when the Georgia judgment was rendered, a father and mother were the joint natural guardians of minor children with equal rights and obligations. S. C. Code (1942) § 8638. This statute is not referred to in the opinion of the Supreme Court in the *Yarborough* case. An examination of the record and briefs in the case on file in the state library shows that the statute was quoted at length in the brief filed in support of the petition for a writ of certiorari but was not

otherwise referred to and was apparently not presented to the court at the argument on the merits. Moreover, we regard it as settled law that if a court of a state has jurisdiction when an action is brought to it, a subsequent removal of a party from the state will not terminate that jurisdiction. *Upton* v. *New Jersey Southern R. Co.,* 25 N. J. Eq. 372, 375; *Lofton* v. *Collins,* 117 Ga. 434, 436, 43 S. E. 708; see *Morrill* v. *Morrill,* 83 Conn. 479, 77 A. 1; 15 C. J. 822, § 135; 21 C. J. S. 143 § 93. Consequently, as by the law of Georgia and North Carolina the domicil of the child was in the former state when the action was brought, the subsequent removal to South Carolina would not in any event terminate the jurisdiction of the Georgia courts, and the statement in the opinion that the removal to South Carolina did not bring about a change of domicil was not necessary to the decision. For these reasons we do not consider the *Yarborough* case as authority for the proposition that, after the removal to South Carolina, the domicil of the child, under its joint guardianship statute, was not there. We have found no decision which in terms deals with the claim of the defendant as to the effect of a joint guardianship in such a situation as that before us.

As Professor Beale points out, the common-law rule that the domicil of a minor child was that of the father was based upon "their mutual legal obligations, namely, the parental government of the child and the discharge of all the father's duties on one hand and the rendition on the other hand of the services which the child owes the father"; 1 Beale, Conflict of Laws, p. 210; or, as he has elsewhere expressed it: "The legal inseparability of father and child is essential to their mutual legal obligations." 8 Corn. L. Q. 103, 104. See *Matthewson* v. *Perry,* 37 Conn. 435, 436; *Glass* v. *Glass,* 260 Mass. 562, 564, 157 N. E. 621. Under statutes like those of

Connecticut and New York making the father and mother joint guardians, a mother with whom a child lives, when separated from her husband, stands very much in the same relationship to the child that the father did under the common law. See *Macdonald* v. *O'Reilly,* 45 Ore. 589, 593, 78 P. 753. It is axiomatic that a person can have but a single domicil. 1 Beale, op. cit., p. 123. There is just as much reason for holding that the domicil of a child residing with his mother, at least if she is rightfully living apart from her husband, is that of the mother as there was for the rule at common law that his domicil was that of his father. See *Draus* v. *International Silver Co.,* 105 Conn. 415, 419, 135 A. 437; *Matter of Thorne,* 240 N. Y. 444, 449, 148 N. E. 630; *Oxley* v. *Oxley,* 159 F. 2d 1011; *White* v. *White,* 77 N. H. 26, 30, 86 A. 353.

If a wife is living apart from her husband for justifiable reasons, or by agreement with him, she may acquire a separate domicil. *Torlonia* v. *Torlonia,* 108 Conn. 292, 296, 142 A. 843. Had the defendant in this case been living apart from her husband under such circumstances, she would have had a domicil here when the New York action was begun; that would have been the domicil of the child; and the New York court would have lacked jurisdiction to make a decree as to his custody. While the trial court has found that the life of the parties while their home was in New York had been marred by marital difficulties, it has not found that the conduct of the plaintiff was such as justified the defendant in living apart from him; and, while there is no finding that after his return to New York he requested her to resume cohabitation with him, he did keep the apartment there for two months; and there is no finding that he consented that she should live apart from him. We cannot, therefore, proceed upon the basis that the defendant acquired a domicil in this

state because she was justified in separating herself from the plaintiff or did so with his consent. We must then meet the question whether the defendant, who, when the action was brought in New York, was by her own choice a resident in this state, had a domicil here which would destroy the jurisdiction of the New York court to make a decree as to the custody of the child.

In *Barber* v. *Barber,* 62 U. S. 582, 16 L. Ed. 226, the court had before it the question whether a divorced wife could acquire a domicil apart from that of her former husband which would entitle her to sue in a federal court on the ground of diversity of citizenship. The court sustained her right to maintain the action. In the course of the opinion, it said (p. 595): "But if the husband, as is the fact in this case, abandons their domicil and his wife, to get rid of all those conjugal obligations which the marriage relation imposes upon him, neither giving to her the necessaries nor the comforts suitable to their condition and his fortune, and relinquishes altogether his marital control and protection, he yields up that power and authority over her which alone makes his domicil hers, and places her in a situation to sue him for divorce *a mensa et thoro,* and to ask the court having jurisdiction of her suit to allow her from her husband's means, by way of alimony, a suitable maintenance and support." The case of *Cheever* v. *Wilson,* 76 U. S. 108, 19 L. Ed. 604, was primarily concerned with certain rights to the income of property in Indiana, but the issue necessarily involved the question of the validity of a decree of divorce secured by the plaintiff from her husband in that state. She had come there from the state of Washington, where apparently she had been living with her husband. There was little in the record to show exactly what motive caused her to make this move, or to show how long she had lived in Indiana (p. 110); but

the trial court found that she did reside there and the court accepted this finding (p. 123). It said (p. 123): "The only question is as to the reality of her new residence and of the change of domicil. . . . It is insisted that Cheever never resided in Indiana; that the domicil of the husband is the wife's, and that she cannot have a different one from his. The converse of the latter proposition is so settled that it would be idle to discuss it. The rule is that she may acquire a separate domicil whenever it is necessary or proper that she should do so. The right springs from the necessity for its exercise, and endures as long as the necessity continues. The proceeding for a divorce may be instituted where the wife has her domicil. The place of the marriage, of the offence, and the domicil of the husband are of no consequence."

In *Haddock* v. *Haddock,* 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, the portions of the opinions in the two previous cases to which we have referred were quoted, and it was said (p. 571): "So also it is settled that where the domicil of a husband is in a particular State, and that State is also the domicil of matrimony, the courts of such State having jurisdiction over the husband may, in virtue of the duty of the wife to be at the matrimonial domicil, disregard an unjustifiable absence therefrom, and treat the wife as having her domicil in the State of the matrimonial domicil for the purpose of the dissolution of the marriage, and as a result have power to render a judgment dissolving the marriage which will be binding upon both parties, and will be entitled to recognition in all other States by virtue of the full faith and credit clause. *Atherton* v. *Atherton,* 181 U. S. 155." But the *Haddock* case went on to hold (p. 572) that, where a husband wrongfully abandons his wife, leaves the state of the matrimonial domicil and goes into another state, a judgment of

divorce rendered on his complaint in an action in that state with merely constructive service upon the wife was not entitled to full faith and credit in other states.

The case of *Williams* v. *North Carolina*, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279, involved the question whether full faith and credit must be given to two decrees of divorce rendered in Nevada, in one of which a husband and in the other of which a wife was the plaintiff. In both actions there had been service only by publication and actual notice to the defendants in North Carolina. They contended that the sole purpose of the plaintiffs in going to Nevada was to obtain divorces and relied upon the *Haddock* case as sustaining their claims that the North Carolina courts were not bound to give full faith and credit to the Nevada decrees. In the *Williams* case the Supreme Court (p. 293) expressly overruled so much of the decision in the *Haddock* case as is stated at the end of the last paragraph above. See *Hooker* v. *Hooker*, 130 Conn. 41, 48, 32 A. 2d 68. The court summed up its conclusion by saying (p. 301): "As stated above, we see no reason, and none has here been advanced, for making the existence of state power depend on an inquiry as to where the fault in each domestic dispute lies. And it is difficult to prick out any such line of distinction in the generality of the words of the full faith and credit clause"; and it held that the Nevada decrees were entitled to full faith and credit in North Carolina. We regard it now as settled that, within the scope of the full faith and credit clause of the United States constitution, a woman may of her own choice, regardless of fault, acquire a domicil separate from that of her husband, at least as far as concerns a divorce action.

The decision in the *Williams* case necessarily supersedes previous decisions to the contrary and much of the discussion among text writers as to the sound rule.

1 Beale, Conflict of Laws, §§ 27.1 et seq.; 2 So. L. Q. 93; Goodrich, Conflict of Laws (2d Ed.) § 33; 91 Cent. L. J. 4, 24. It remains to consider whether a married woman may acquire a separate domicil regardless of fault so far as to make her new domicil that of a child of the marriage who is living with her. In any proceeding to determine the custody of a child, the controlling elements are his welfare and best interests. *Mullins* v. *Becker,* 113 Conn. 526, 530, 155 A. 705; *Hogewoning* v. *Hogewoning,* 117 Conn. 264, 265, 167 A. 813; 43 C. J. S. 57. A number of courts have held or intimated that a decree of divorce rendered in a state which awards the custody of a child to one or the other of his parents does not preclude the courts of another state where the child actually resides from making such an order as to his custody as would best serve his interests, even without proof of a change of circumstances. *In re Bort* (Brewer, J.), 25 Kan. 308; *Barnett* v. *Blakley,* 202 Iowa 1, 6, 209 N. W. 412; *In re Stockman,* 71 Mich. 180, 193, 38 N. W. 876; *In re Culp,* 2 Cal. App. 70, 83, 83 P. 89 (concurring opinion); see *People ex rel. Herzog* v. *Morgan,* 287 N. Y. 317, 320, 39 N. E. 2d 255; *Matter of Bull,* 266 App. Div. (N. Y.) 290, aff'd, 291 N. Y. 792, 53 N. E. 2d 368; *Durfee* v. *Durfee,* 293 Mass. 472, 478, 200 N. E. 395. We ourselves took that view in *Dunham* v. *Dunham,* 97 Conn. 440, 443, 117 A. 504, but our statement there made cannot be reconciled with our later decision in *Freund* v. *Burns,* 131 Conn. 380, 383, 40 A. 2d 754. While the decisions in other states cited above are to a greater or less extent departures from the rule, which is established by the great weight of authority and which we adopted in *Freund* v. *Burns,* supra, as to the extent to which a provision in a divorce decree concerning the custody of a child rendered in one state is entitled to full faith and credit in other states, they

emphasize the fact that as a general rule the courts of a state where a child actually resides are in the best position to determine the persons in whose custody he should for his best interests be placed. These considerations lead to the conclusion that where, under a joint guardianship law, the domicil of a child is that of his mother with whom he is residing, she may, in so far as court action for determining his custody is concerned, have a domicil apart from her husband, regardless of her reasons for separating from him. In such circumstances, she comes within the statement in *Cheever* v. *Wilson*, 76 U. S. 108, 124, 19 L. Ed. 604, that a wife may establish a domicil of her own "whenever it is necessary or proper that she should do so." If she does so acquire a separate domicil before an action for divorce or separation is begun in a court of another state, so much of that decree as awards the custody of a child of the marriage is beyond the jurisdiction of that court, and the courts of the state where the mother resides, in an action concerning the child's custody, may render such a judgment as will serve the welfare and best interests of the child even though it be contrary to the provisions of the divorce or separation decree.

The trial court has concluded that the defendant was, at the time the action for separation was brought in New York, domiciled in this state. It follows from what we have said that the child was, by derivation from the mother, also then domiciled here. Under our laws, habeas corpus lies to determine the custody of a child, at least if he is domiciled in this state. *Dunham* v. *Dunham*, supra; *Pfeiffer* v. *Pfeiffer*, 99 Conn. 154, 157, 121 A. 174; *Lewis* v. *Klingberg*, 100 Conn. 201, 207, 123 A. 4. Our conclusion is that the Superior Court in this case had the right to determine the custody of the child as between the parties in such

a way as would serve his best interests and in so doing was not obligated to give full faith and credit to the provisions of the New York decree as to his custody. The plaintiff raises no issue as to the correctness of the decision of the trial court upon the merits.

There is no error.

In this opinion JENNINGS and ELLS, Js., concurred.

DICKENSON, J. (dissenting). The majority reach the conclusion that a wife may acquire a domicil apart from her husband regardless of her reasons for separating from him and that under a joint guardianship law the domicil of their child is that of his mother if he is residing with her. They conclude that "In such circumstances she comes within the statement in *Cheever* v. *Wilson*, 76 U. S. 108, 124, 19 L. Ed. 604, that a wife may establish a domicil of her own 'whenever it is necessary or proper that she should do so.'" The sentence following that quoted is: "The right springs from the necessity for its exercise, and endures as long as the necessity continues." No necessity appears in the case before us for the acquirement of a separate domicil by the defendant mother.

The majority opinion recognizes, as it must under established law, that the judgment of the New York court, so far as it relates to the separation of the parties, is entitled to full faith and credit under the federal constitution. Article IV, § 1, of the constitution requires full faith and credit to be given to the "judicial Proceedings of every other State." The judgment of another state "should have the same credit, validity and effect in every other court in the United States which it had in the state where it was pronounced. . . ." *Bank of North America* v. *Wheeler*, 28 Conn. 433, 439; *Wehrhane* v. *Peyton*, 134 Conn. 486, 495, 58 A. 2d 698; *Williams* v. *North Carolina*,

317 U. S. 287, 293, 63 S. Ct. 207, 87 L. Ed. 279. The copy of the judgment before us as an exhibit shows that it was based upon a finding that the defendant had abandoned the plaintiff without just cause, and we must accept this as an established fact. The New York court first took jurisdiction of the parties, and the defendant has made no appeal to the courts of this state for custody of the child except in defense to the action of habeas corpus.

In *Torlonia* v. *Torlonia,* 108 Conn. 292, 296, 142 A. 843, we stated that a rule of "practically unanimous acceptance in the United States is that a wife may acquire another and separate domicil from that of her husband, giving jurisdiction for proceedings for divorce, where the theoretical unity of husband and wife has been dissolved, as where the husband has given cause for divorce, or there is a separation of the parties by agreement, or where cruel treatment or other similar misconduct on the part of the husband has produced a permanent separation." In *Glass* v. *Glass,* 260 Mass. 562, 565, 157 N. E. 621, it is said: "A married woman may acquire a domicil different from that of her husband in appropriate circumstances. . . . But in the absence of some neglect of parental duty on the part of the father, or some provision of statute, that does not affect the domicil of minor children of the two born in lawful wedlock." In *Sherrer* v. *Sherrer,* 334 U. S. 343, 354, 68 S. Ct. 1087, 92 L. Ed. 1055, decided June 7, 1948, it is stated that the obligation of one state to another is to give full faith and credit to the divorce decrees of another state, italicizing "full." In that case earlier cases are reviewed and it is said (p. 351): "Those cases stand for the proposition that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State

where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree." In that case the defendant participated in the trial in the sister state. In this case she did not, but she had "full opportunity to contest the jurisdictional issues." She had personal notice of the action by receipt of the complaint, and custody of the child was requested therein. It is added in the *Sherrer* case (p. 352) that "If respondent failed to take advantage of the opportunities afforded him, the responsibility is his own." Where custody is involved, a decree of divorce disposes of the custody of the child as between husband and wife. *Matter of Thorne,* 240 N. Y. 444, 449, 148 N. E. 630.

The majority seek to fortify their position by resort to a general rule "that the courts of a state where a child actually resides are in the best position to determine the persons in whose custody he should for his best interests be placed." The trial court in the instant case found that the care of the child, whichever parent had custody, must fall largely on his grandparents and that the parents of both parties could furnish an entirely adequate home for the child, but it concluded that he should have his mother's care. This was an issue that the New York court must necessarily have taken into consideration. The trial court has found that there has been no material change in the circumstances of the parties as far as they have a bearing on the custody of the child from the date of the commencement of the New York action to the date of the hearing in this action. There was therefore no justification for the courts of this state to take juris-

diction on this ground. *Freund* v. *Burns*, 131 Conn. 380, 385, 40 A. 2d 754.

I cannot concur in a ruling that a wife may abandon her husband and home in one state under such circumstances as these and establish a domicil for herself and their child in another state so as to justify the courts of the latter state in ignoring the judgment of the former as to custody of the child. It seems apparent that the effect of such a judgment will be limited. It can hardly be expected that the New York court will take our view of its lack of jurisdiction. The purpose of the full faith and credit provision will be defeated. See *Estin* v. *Estin*, 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1078. It is noted that the trial court's decision does not permit the plaintiff to have custody of his child outside the state. He is restricted to visitation at reasonable times. The practical result of the decision is that the father, who has been abandoned by his wife without just cause, is further deprived of all custody of his child by that act.

In this opinion MELLITZ, J., concurred.