## Eckstein Adoption

*I. Louis Rubin,* for petitioner.

SATTERTHWAITE, J., February 4, 1955.—Upon the presentation of the within petition, the court of its own motion raised the question of its jurisdiction to act thereon. The problem involved is the proposed adoption, by a citizen and resident of this county and State, of the illegitimate, seven-year-old daughter of petitioner's wife, both the wife and child being native-born citizens and present residents of Germany where the marriage occurred on December 3, 1953, during petitioner's tour of duty in the service of the United States Army. The little girl is not petitioner's natural child. Petitioner, although still in the service, has been returned to the United States and desires to bring his wife and the latter's child to this country under the nonquota provisions of the immigration laws. According to counsel, however, he is precluded therefrom by reason of the construction of section 101(*b*) (1) of the Immigration and Nationality Act of June 27, 1952, 66 Stat. at L. 166, 8 U. S. C. A. 1101(*b*) (1), by the immigration authorities, so as to exclude an illegitimate child from the definition of stepchild under the nonquota provisions therein contained. It is suggested that if the child be legally adopted by petitioner, she will qualify thereunder, and hence, together with her mother, be entitled to admission to the United States without the delays and uncertainties incident to entry under the quota provisions. Her mother, petitioner's

wife, joins in the application and has consented to the proposed adoption.

Section 1(*d*) of the Act of April 4, 1925, P. L. 127, as last amended by the Act of August 26, 1953, P. L. 1411, 1 PS §1, provides, in part, as follows:

"It shall be lawful for any adult person desirous of adopting any person, either a minor or an adult, as his or her heir or as one of his or her heirs, to present his or her petition to the court of the county where he or she may be a resident, or in the county in which the person to be adopted is a resident, upon allowance by the court in that county, or upon allowance by the court in the county in which is located the approved agency or institution, or any of their branch offices, which placed the person for adoption, declaring such desire and that he or she will perform all the duties of a parent to such person."

This statutory provision, however, is not dispositive of the present problem. A decree of adoption involves a change in a personal status and is a creature purely of local statute, being unknown to the common law. Unless, therefore, the proper individuals involved are within the jurisdiction of the State so authorizing, it would seem axiomatic that the natural ties of blood relationship could not judicially be altered or affected thereby. While it may be proper for the legislature to specify the county in which a petition for adoption shall be filed if all the parties, although within the State, are not within the same county: McQuiston's Adoption, 238 Pa. 304; Thompson's Adoption, 290 Pa. 586; nevertheless, such statutory designations go merely to questions of venue and would be subject to the implicit qualification requiring that the sovereign State of Pennsylvania have jurisdiction over the proper parties somewhere within its boundaries: Findlay Adoption, 62 D. & C. 451, 456. See annotation in 170 A. L. R. 403 as to what constitutes residence or

domicile for jurisdictional purposes in adoption cases.

Under the facts disclosed in the petition, the courts of Pennsylvania have no power to assume jurisdiction over the subject matter as therein presented. Section 142 of the A. L. I. Restatement of Conflict of Laws provides, on this subject, as follows:

"The status of adoption is created by either:

"(a) the law of the state of domicil of the adopted child; or

"(b) the law of the state of domicil of the adoptive parent if it has jurisdiction over the person having legal custody of the child or if the child is a waif and subject to the jurisdiction of the state."

Although no cases have been found which involve the factual situation here presented and although no Pennsylvania decisions have referred to the restatement definition other than the Findlay case, supra (where both conditions had been complied with), nevertheless, we believe that the enunciation of the law in this respect is therein accurately set forth and is controlling on the question of judicial authority here presented.

It is well settled that jurisdiction in a proceeding involving the analogous problem of custody of a minor child is determined by the domicil or residence of the child: Commonwealth ex rel. Camp v. Camp, 150 Pa. Superior Ct. 649; Commonwealth ex rel. Teitelbaum v. Teitelbaum, 160 Pa. Superior Ct. 286; Commonwealth ex rel. v. Barbush, 71 D. & C. 442. Furthermore, in the Teitelbaum case the Superior Court implicitly recognized that these considerations applied to adoptions as well, inasmuch as it reversed the decision of the Municipal Court of Philadelphia (which had held that it had no jurisdiction of a custody dispute between natural parents of a minor child where the child had been sent to relatives in New Mexico for adoption),

and remanded the record for a further hearing for the express purpose of inquiry into the jurisdiction of the New Mexico courts to enter a decree of adoption. The opinion pointed out that the determination of this question, in turn, would depend upon whether or not there had been a legal change in the domicil or residence of the child from Pennsylvania to New Mexico. While the Superior Court recognized that an adoption in another State is entitled to full faith and credit under the Federal Constitution, yet it also held that the power of such foreign court to make a valid change in parental status would be open to collateral attack if it lacked jurisdiction over the subject matter.

In Wathen v. Ugast et al., 143 F. 2d 160, the Circuit Court of Appeals for the District of Columbia held that proceedings commenced by residents of the district for the adoption of their niece who was domiciled in the State of Virginia should be dismissed for lack of jurisdiction. The natural parents had been divorced in Virginia, the court in that action finding them both unfit parents and awarding custody of the child to a charitable institution in that State. After observing that the applicable legislation in terms gave the district court jurisdiction in such cases where petitioner was a legal resident of the District of Columbia, the court commented further as follows at page 161:

"But we think the Code implies that the child must be within the court's control . . . Regardless of the intent of the Code, no court can validly dispose of a child by adoption proceedings unless it has jurisdiction of the child or of the person who is legally entitled to its custody."

See also In re Pratt, 219 Minn. 414, 18 N. W. 2d 147; Noel v. Olszewski, 350 Ill. App. 264, 112 N. E. 2d 727.

In the instant case, notwithstanding that the child and her mother neither are nor ever have been physi-

cally within this Commonwealth, petitioner contends that the child has acquired a domicil here by operation of law. He reasons that an illegitimate minor child has the domicil of its mother, and the domicil of a married woman necessarily is that of her husband. However, we cannot agree that these general principles have any application to the particular facts herein disclosed, even if we disregard any consideration of what the German law on the subject might be, a matter as to which we are totally uninformed.

As an abstract proposition, the domicil of an illegitimate child in Pennsylvania would be that of its mother: In re Saunders' Adoption, 13 D. & C. 755; Daisey's Adoption, 19 D. & C. 660, 665; Restatement of Conflict of Laws, §34. Moreover, by virtue of the legal fiction of unity of the person of husband and wife, the old common-law rule was that "a wife cannot be a citizen of another state; her domicil is the domicil of her husband, her settlement is his; they are but one body". Dougherty v. Snyder, 15 S. & R. 84, 90. See also section 27 of the A. L. I. Restatement of Conflict of Laws.

The application of these two general principles to the instant petition, however, is unjustified under the circumstances presented. In the first place, it is not at all clear that the appellate courts of Pennsylvania would conclude, upon a *change* of the legal domicil of a mother by operation of law, as by her marriage, that necessarily her child's domicil would change also. In the course of the opinion in School Directors v. James, 2 W. & S. 568, at pages 570-71, Chief Justice Gibson remarked, by way of dictum, as follows:

"A husband cannot properly be said to stand in the relation of a parent to his wife's children by a previous marriage, . . . Neither can they derive the domicil of a subsequent husband from her, because her new domicil is itself a derivative one, and a consequence

of the merger of her civil existence. Her domicil is his, because she has become a part of him; but the same thing cannot be said of her children. Having no personal existence for civil purposes, she can impart no right or capacity which depends on a state of civil existence; and the domicil of her children continues, after a second marriage, to be what it was before it." (However, compare comment (*b*) of section 34 of the restatement.)

In any event, however, even assuming that this statement is not the modern law of this State or of Germany, and that the domicil of petitioner's step-daughter would continue to follow that of her mother upon a change in the latter's status solely by operation of law, it does not necessarily follow that the mother became domiciled in Pennsylvania merely by going through the marriage ceremony and despite her continued residence in Germany thereafter. The old common-law rule, even if it applied to such a situation is now subject to many exceptions. The problems involving the general rule and its exceptions usually arise in connection with divorce proceedings between husband and wife, although they are not confined to that subject. See annotations in 75 A. L. R. 1254, 90 A. L. R. 358, and 128 A. L. R. 1422, which make it clear that where the legal fiction of the unity of the spouses is factually breached by actual circumstances inconsistent with the continuance of the usual relationships and obligations of marriage, as in the case of a hostile separation, the wife may properly acquire a separate domicil. The later annotations above referred to indicate that the exceptions to the general rule might well be extended to situations where the separation was amicable as well as hostile.

The relaxation of the strict common-law rule is illustrated by the decision in Colvin v. Reed, 55 Pa. 375. The question there presented was the validity of

an Iowa divorce, obtained by the husband who had unquestionably set up a bona fide residence in that State, on the ground of desertion by the wife who remained in Pennsylvania, the prior common marital domicil. Since the wife never was in Iowa and was not served, it was held that the divorce would not be recognized in Pennsylvania, the court commenting in the course of the opinion at page 379:

"If by legal unity the wife may be considered a citizen of Iowa, contrary to the truth, and thereby subjected to the jurisdiction of its tribunals, the case must be ended, for the provision in the Federal Constitution giving effect to the record compels us to recognize it as equal in validity with our own. But the unity of person created by the marriage is a legal fiction, to be followed for all useful and just purposes, and not to be used to destroy the rights of either, contrary to the principles of natural justice, in proceedings which, from their nature, make them opposite parties."

See also Reed v. Reed, 30 Pa. Superior Ct. 229; Starr v. Starr, 78 Pa. Superior Ct. 579; Hilyard v. Hilyard, 87 Pa. Superior Ct. 1; Rosenberg v. Rosenberg, 163 Pa. Superior Ct. 138, 140.

It is true that most of these decisions involved factual situations where the unity of the husband and wife in the marital relation had been breached because of discord and domestic difficulties between them, and we are aware of no appellate court case in this State which has extended the exceptions to the general rule to cases where the separation is by force of circumstances or is consensual. To that extent, these precedents may be said not to be compelling on the facts of the within petition. However, we believe that the underlying principles and reasons for such decisions are equally applicable here, particularly where the wife has never physically been present in this jurisdiction, a factual

circumstance which distinguishes this case from such decisions as Barning v. Barning, 46 Pa. Superior Ct. 291, where the court indicated at page 294 that the mere intention of the woman that her husband's domicil should not be hers, even though consented to by the husband, would not alter the consequences of the general rule *"growing out of their cohabitation in New York in the relation of husband and wife."* Why should the presence or absence of marital discord in the domestic relationship be the *exclusive* factor in determining the practical and legal effects of a complete and unequivocal physical separation? A more accurate and comprehensive statement of the principles involved would seem to be formulated in section 28 of the A. L. I. Restatement of Conflict of Laws, as follows:

"If a wife lives apart from her husband without being guilty of desertion according to the law of the state which was their domicil at the time of separation, she can have a separate domicil."

This section was cited with apparent approval in Obici Estate, 373 Pa. 567, and several lower court decisions have followed it.

In Commonwealth ex rel., v. Barbush, 71 D. & C. 442, 445, the court held:

"Where a married woman is living separate and apart from her husband, by virtue of an agreement, she may acquire a separate domicil, and in such case a child living with her acquires her domicil: Boardman v. Boardman, 135 Conn. 124, 62 A. 2d 521 (1948); A. L. I. Restatement of the Law of Conflict of Laws, Secs. 145 and 146; 53 A. L. R. 1160."

In Dickson v. Dickson, 78 D. & C. 189, the court cited section 28 of the restatement and held that a lifelong resident of Pennsylvania did not lose her legal domicil therein for divorce purposes by marrying a civilian attached to an Army camp in the Phillipines, particu-

larly since he had failed to establish any particular dwelling place as a home for her. In the instant case on the same reasoning, it is of small moment that petitioner may have established a home for his wife and her child in Pennsylvania if the latter never have been there and never practically can get there by reason of the immigration laws.

Williams v. Williams, 88 D. & C. 445, is particularly apposite. There the court held that it had jurisdiction in a divorce case where plaintiff had always been a resident of Pennsylvania prior to her marriage to a resident of Florida while both were in the armed services. The parties lived together only in California and plaintiff was never physically present in Florida. The master had recommended against a divorce on the ground that plaintiff had lost her domicil in Pennsylvania by reason of the marriage. The court overruled the master and entered a divorce decree, observing at page 446-47 as follows:

"The general rule as stated by the courts and text writers is well established in Pennsylvania and elsewhere. In the cases we have read, a careful consideration of them reveals one element not present in this case. *In the cases referred to, the wife, after marriage, had been physically present, even if for a very short time, in the State where her husband resided. In this case the wife was never in Florida.*" (Italics supplied.)

The principles of these and other similar decisions require that the within petition be dismissed on jurisdictional grounds. Even assuming that the domicil of the child proposed to be adopted not only originally was but would continue to follow that of her mother, we doubt that under the particular circumstances here presented the domicil of the mother has necessarily and for all purposes become that of her husband. This conclusion seems almost inevitable when we recall not only that the mother never has been here, but also

that international considerations are involved and the legal barrier of the immigration laws makes the cohabitation of the family as a unit within the jurisdiction of this court a present impossibility. Under the circumstances, much as we sympathize with the position in which petitioner finds himself, we do not believe that we could or should take jurisdiction.

*Order*

And now, February 4, 1955, the within petition for adoption of Gerlinde Eckstein is dismissed for lack of jurisdiction in this court to entertain the same.